## Richmond

WILLIAM H. PARNELL, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0595-91-2

Decided November 17, 1992

Counsel

James E. Jarrell, III (Jarrell, Hicks & Sasser, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BENTON, J.**—William H. Parnell, Jr., was convicted by a jury of threatening to damage a dwelling in violation of Code § 18.2-83 and maliciously shooting at an occupied building in violation of Code § 18.2-279.[1] Parnell contends that the convictions should be reversed

---

[1] These statutes read as follows:

A. Any person (a) who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure, or any means of transportation, or (b) who communicates to another, by any means, information, knowing the same to be false, as to the existence of any peril of bombing, burning, destruction or damage to any such place of assembly, building or other structure, or any means of transportation, shall be guilty of a Class 5 felony; provided, however, that if such person be under fifteen years of age, he shall be guilty of a Class 1 misdemeanor.

B. A violation of this section may be prosecuted either in the jurisdiction from which the communication was made or in the jurisdiction where the communication was received.

Code § 18.2-83.

because (1) the trial judge erred in instructing the jury concerning the term "threat;" (2) the trial judge erred in admitting statements that Parnell made to a sheriff's deputy three days after the incident; (3) the jury was not properly instructed concerning the elements of Code § 18.2-83 and did not have sufficient evidence upon which to convict him of threatening to damage a structure; (4) Code § 18.2-279 is unconstitutionally vague; and (5) the evidence was insufficient to support a conviction under Code § 18.2-279. We affirm both convictions.

## I.

The evidence proved that in June 1990 one of James L. Whitlock's friends was involved in a conflict with Parnell and asked to use Whitlock's telephone to call the police. Several weeks later, on the night of July 4, as Whitlock returned to his home, he saw Parnell, whom he had known for fifteen years, and Parnell's brother, Curtis, in an automobile. When the brothers drove past Whitlock's home, Parnell called Whitlock several vile names. Parnell stopped at the residence next to Whitlock's home and continued to call Whitlock other vile names. Parnell also yelled vile racial epithets about Whitlock's friend, stated that he would kill Whitlock, and said that he would burn Whitlock's house. Parnell concluded by saying, "[I] will be back."

Two days later, a deputy sheriff arrived at Whitlock's house and took Whitlock to obtain an arrest warrant charging Parnell with threatening to burn his house. While Whitlock was away, his neighbor, Eugene Pascal, brought two of the Whitlock children home. When Pascal arrived, Whitlock's wife heard two shots fired in the vicinity. She also heard someone yell, "Willie, Curtis, come back here." As Pascal prepared to leave, Whitlock's wife and Pascal saw an automobile drive by without its lights on. Pascal went outside and stood in the

---

If any person maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, or maliciously shoots at, or maliciously throw any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending shall be guilty of a Class 4 felony; and, in the event of the death of any person, resulting from such malicious shooting or throwing, the person so offending shall be guilty of murder, the degree to be determined by the jury or the court trying the case without a jury.

If any such act be done unlawfully, but not maliciously, the person so offending shall be guilty of a Class 6 felony; and, in the event of the death of any person resulting from such unlawful shooting or throwing, the person so offending shall be guilty of involuntary manslaughter.

Code § 18.2-279.

center of the front yard to determine what was happening. The automobile turned around, turned its lights on, and then turned them off again as it approached the Whitlock home. Whitlock's wife and Pascal saw Parnell in the automobile holding a gun. Parnell shot at the outdoor light and then fired a shot toward the house. After passing the house, the automobile turned and came back. Parnell again shot at the light and shot toward the house before the automobile drove away. Although no bullets hit the house, at least one bullet hit the outside light.

The evidence also proved that on the following day, a sheriff's deputy arrested Parnell and read Parnell a statement of *Miranda* rights. When he asked if Parnell had anything to say, Parnell responded, "He will die and his house will burn." On this evidence, the jury convicted Parnell on both charges and sentenced him to three years in prison for threatening to burn Whitlock's home and to five years in prison for shooting at the home.

## II.

The jury had to determine whether Parnell communicated "to another by any means [a] threat to . . . burn, destroy, or in any manner damage any . . . building or other structure." Code § 18.2-83. Parnell requested that the trial judge instruct the jury as follows concerning the definition of "threat":

> The term "Threat" is defined as an avowed present determination or intent to injure presently or in the future. A statement may constitute a threat even though it is subject to a possible contingency in the maker's control. The prosecution must establish a "true threat", which means a serious threat as distinguished from words uttered as mere political argument, idle talk or jest. In determining whether words were uttered as a threat the context in which they were spoken must be considered.

Parnell argues that the trial judge committed reversible error when he deleted the first three sentences and instructed the jury as follows:

> In determining whether words were uttered as a threat the context in which they were uttered must be considered.

We conclude that the trial judge did not commit reversible error.

"'The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them.'" *Cooper v.*

*Commonwealth*, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (quoting 75 Am. Jur. 2d *Trial* § 573 (1974)).

> "It is elementary that the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt." Unless those elements are defined by instructions available to the members of the jury during their deliberation, they cannot properly determine whether the Commonwealth has carried its burden. The duty to give such instructions is not discharged by simple reference to the indictment or by reading the applicable statute to the jury. "It is always the duty of the court *at the proper time* to instruct the jury on all principles of law applicable to the pleadings and the evidence (emphasis added)" and "a correct statement of the law applicable to the case, *when the law is stated*, ... [is one of the] essentials of a fair trial."

*Dowdy v. Commonwealth*, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) (emphasis to original) (citations omitted). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

■ The trial judge did not err in rejecting, in part, the instruction that Parnell submitted. Although we agree with Parnell that the first sentence of the proposed instruction properly defined the term "threat," we conclude that the second and third sentences were potentially misleading. The trial proof contained no evidence of a "possible contingency in the maker's control." Therefore, the trial judge did not err in refusing to instruct the jury on such an abstraction. "It is error to give an instruction, though correct as an abstract statement of law, unless there is sufficient evidence in the record to support it." *Swift v. Commonwealth*, 199 Va. 420, 424, 100 S.E.2d 9, 13 (1957).

■ In a similar vein, we conclude that the trial judge did not err in refusing to instruct the jury that the Commonwealth had to prove a "true threat" or a "serious threat." The statute requires proof of a "threat." The adjectives "true" and "serious" would have interjected an issue that was not supported by the evidence. *Id.* Moreover, it is a fundamental principle that "[a]lthough an instruction may correctly state the law, it should not be given if it is inapplicable to the facts in evidence . . . [and] might confuse or distract the jury." *King v. Commonwealth*, 2 Va. App. 708, 711, 347 S.E.2d 530, 531 (1986) (citation

omitted). The evidence proved that the remarks were made contemporaneously with other vile and derogatory remarks directed toward Whitlock. We conclude that the trial judge's decision to avoid placing before the jury the distinction between "threat," "true threat," and "serious threat" was not error. The instruction to the jury to consider the context in which the words were uttered sufficed to guide the jury in its function.

Although we agree with Parnell that the first sentence of his proposed instruction contained the usual dictionary definition of the word "threat," we conclude that the trial judge did not commit reversible error in "rely[ing] upon the intelligence of jurors to give to plain, ordinary words their plain, ordinary meaning." *McCoy v. Commonwealth*, 133 Va. 731, 735, 112 S.E. 704, 705 (1922). Parnell contended at trial that, although he was angry with Whitlock, cursed him, and called him vile names, he never mentioned burning his house. Parnell does not contest that he spoke in anger or that he harbored animosity toward Whitlock. Those issues were undisputed. The disputed issue was whether, in fact, Parnell said he would burn Whitlock's house. If the jury found that he uttered those words, the trial judge instructed the jury that it had to consider the context in which the words were spoken in determining whether they constituted a threat.

> "The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. In [the] instructions the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled."

*Cooper*, 2 Va. App. at 500, 345 S.E.2d at 777 (citation omitted).

There is not a scintilla of evidence that Parnell's comment was made in jest. Thus, even if the trial judge erred in not more fully explaining to the jury the definition of "threat," the omission was not material to the case. The instructions given to the jury correctly stated the law. Accordingly, we conclude that in the context of this case the omission was harmless error. *See Kil v. Commonwealth*, 12 Va. App. 802, 811-13, 407 S.E.2d 674, 679-80 (1991).

## III.

■ When Parnell was arrested and charged with having threatened to burn Whitlock's home, the deputy sheriff read Parnell a statement of his *Miranda* rights and explained to Parnell the charge. In response to the deputy sheriff's explanation, Parnell said, "He will die and his house will burn." Parnell contends that the statement was irrelevant, prejudicial, and inadmissible evidence of unrelated criminal behavior and that the trial judge erred in allowing the Commonwealth to prove he made that statement.

The general rule excluding evidence of "other crimes" extends only to crimes which are unrelated to those on trial, and which are offered solely for the purpose of showing that the accused was a person of such character as to be a likely perpetrator of the offense charged. If the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime.

*Scott v. Commonwealth,* 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984) (citations omitted).

Parnell's statement was not unrelated to the offense for which he was being tried. The evidence proved that during the incident on July 4, Parnell called Whitlock vile names and was extremely angry with him. Parnell's statement, made two days later, had the tendency to prove his animosity toward Whitlock. It tended to prove Parnell's state of mind and, thus, corroborated the testimony that Parnell harbored extreme hostility toward Whitlock. Indeed, after the statement was admitted in evidence, Parnell testified in his own defense and admitted that he was angry at Whitlock.

Parnell, however, denied at trial that he threatened to burn Whitlock's house. The statement he made in the presence of the deputy sheriff also corroborated Whitlock's testimony that Parnell threatened to burn his house. The short time span between the events and the identity of the statements tended to corroborate Whitlock's testimony that Parnell made the same statement to him two days earlier. *See Woodfin v. Commonwealth,* 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988), *cert. denied,* 490 U.S. 1009 (1989); *Minor v. Commonwealth,* 213 Va. 278, 280, 191 S.E.2d 825, 826-27 (1972). Thus, we conclude that the statement was admissible and that its probative value outweighed the incidental prejudice that it may have engendered.

## IV.

Parnell asserts for the first time on appeal that the trial judge failed to instruct the jury that the recipient of a threat must reasonably believe that the person who made the threat will act according to the expression of intent. Neither party offered such an instruction. The trial judge instructed the jury that "[i]n determining whether words were uttered as a threat the context in which they were spoken must be considered." Thus, we cannot conclude that "[t]he granted instruction[s] omitted some essential element of the offense." *Jimenez v. Commonwealth*, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991). Accordingly, Parnell's failure to offer the instruction that he now contends should have been given bars our consideration of that issue on appeal. *See Tomlinson v. Commonwealth*, 8 Va. App. 218, 225, 380 S.E.2d 26, 30 (1989); *Gardner v. Commonwealth*, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986).

## V.

Parnell also contends for the first time on appeal that Code § 18.2-279 is unconstitutional. At no time in the trial court did Parnell challenge this statute or raise this issue. A defendant who fails to challenge the constitutionality of a statute in the trial court is barred from raising that issue on appeal. *See* Rule 5A:18; *Jones v. Commonwealth*, 230 Va. 14, 18 n.1, 334 S.E.2d 536, 539 n.1 (1985); *Cottrell v. Commonwealth*, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991).

## VI.

In addition, Parnell contends for the first time on appeal that his conviction for shooting at an occupied structure in violation of Code § 18.2-279 is "contrary to the law and the evidence." The record reflects that at no time in the trial court did Parnell move to strike the Commonwealth's evidence at the close of the Commonwealth's case, or to strike the evidence at the close of his evidence and the Commonwealth's rebuttal, or to set aside the verdict after the jury rendered its verdict. Having failed to raise this issue in the court below, Parnell is barred from raising it for the first time on appeal. *See* Rule 5A:18.

For these reasons, the judgments are affirmed.

*Affirmed.*

Coleman, J., and Fitzpatrick, J., concurred.