COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia

TAMEKIA ANDERSON

v.      Record No. 1923-94-2      MEMORANDUM OPINION[*] BY
                                  JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA              AUGUST 1, 1995


            FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
                 James M. Lumpkin, Judge Designate

            John M. Williamson for appellant.

            Monica S. McElyea, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     The appellant, Tamekia Anderson, was convicted in a bench

trial of threatening to bomb a nursing home in violation of Code

§ 18.2-83.  On appeal, she contends that (1) because the note

placed in the suggestion box remained in the box until someone

retrieved it at a future time, she neither communicated the

threat or possessed a present intention to injure anyone, and (2)

the threat was not credible and was conditional.  We disagree and

affirm.

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom."  <u>Martin v. Commonwealth</u>,

4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  Catherine Renee

Zahn is the office manager at the Meadows Nursing Home.  She

---

[*]Pursuant to Code § 17-116.010, this opinion is not designated
for publication.

testified that she collects all communications placed in the nursing home's suggestion box on the eighth day of every month. On May 8, 1993, Zahn found an anonymous note in the suggestion box with the following message:

TO:  The Administrator
I have a suggestion!  Blow this hellhole up & make sure Julia is in here when the place blows.  If you don't do it -- I will.  So watch out and tell Julia her days are numbered.

The director of nursing was Julia McNeese.  Zahn indicated that "an investigation [was conducted] trying to find out who originally had written that note."  Handwriting samples from personnel files were studied without success.  Pamela Dozier, the executive director of the nursing home, testified that, in late June of 1993, she received a facsimile from the nursing home's corporate headquarters of an employee questionnaire that had been sent to the corporate office.  The unsigned questionnaire contained threats to "cause serious bodily harm" to "Pam and Julia" and was written in the same handwriting as the original note.

Chief Investigator Parrish conducted an investigation to find the person who wrote the note.  On August 10, 1993, officials at the nursing home contacted Parrish and informed him that they had received a note in the suggestion box suggesting that a change machine be installed in the employee's lounge. This note was unsigned and written in the same handwriting as the May 8 note.  By offering a reward to the person who suggested the

change machine, officials discovered that appellant wrote both notes for her mother, who was an employee at the nursing home. Parrish confronted appellant, and she admitted writing the notes.

Code § 18.2-83 provides, in pertinent part:

> Any person who (a) makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure . . . shall be guilty of a Class 1 misdemeanor.

"A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property. The communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expression of intent." Perkins v. Commonwealth, 12 Va. App. 7, 16, 402 S.E.2d 229, 234 (1991). A threat "'is defined as an avowed present determination or intent to injure presently or in the future.'" Parnell v. Commonwealth, 15 Va. App. 342, 423 S.E.2d 834 (1992).

Appellant asserts that because the note may have been placed in the suggestion box at some point after it was last emptied on April 8, 1993, and remained there for up to thirty days before the box was emptied on May 8, 1993, the note failed to possess the immediacy required to fit within the definition of a threat. Specifically, appellant contends that the indictment charged

that she threatened to bomb the nursing home on May 8, 1993, but, because the note was written up to thirty days before that date, there was insufficient evidence that she still intended to bomb the nursing home on May 8. Appellant argues that "there is simply no way of telling what the Appellant's intentions, feelings, or emotions were on May 8, 1993." She also contends that because the nursing home was not bombed before she was discovered as the anonymous writer and apprehended, she no longer intended to carry out the bombing.

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991). "Intent may be shown by a person's conduct and by his statements." Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). Considered in its particular context, the anonymous note was placed in a regularly emptied suggestion box in a nursing home occupied by elderly patients. The staff at the nursing home contacted the police and initiated an investigation to uncover the anonymous bomber as soon as the note was found and read. The investigation was ongoing. During the investigation, the nursing home's corporate headquarters faxed a document written in the same handwriting as the prospective bomber, also unsigned, threatening bodily harm to Julia and Pam.

Under appellant's theory, a written threat that is mailed or

delivered indirectly by a third party can never be a threat under Code § 18.2-83.  Such a result would be absurd and would be contrary to the legislature's intent and language.  The statute requires that a threat be made and communicated.  Appellant made the threat when she wrote the note and placed it in the suggestion box.  The threat was communicated when the note was taken out of the box and read.  Thus, the crime was not completed until May 8, 1993.

The contents of the note, read in conjunction with the additional anonymous note sent to corporate headquarters, confutes appellant's argument that there was insufficient evidence of an actual intent to bomb the nursing home.  There was no evidence that the threat was withdrawn or recanted, that the suggestion box was broken into in an attempt to retrieve the note, or that the writer no longer harbored sufficient ill will to bomb the nursing home.  On the contrary, appellant's actions evinced a continuing threat to damage the nursing home.

Appellant also argues that the threat was not credible because (1) no one would have written the suggestion about the change machine, which led to her apprehension, if she still intended to bomb the nursing home, and (2) the threat was based on an absurd condition precedent.  As to the suggestion for the change machine, Parrish testified that appellant told him that her mother was not aware of the threatening note.  Because she was unaware that her daughter had written the earlier note,

appellant's mother had no qualms about implicating her daughter in an attempt to gain the reward.

Because the appellant threatened to bomb the nursing home, with Julia present, only if the administrator refused to do it, appellant alleges that the threat was absurd and "nonsensical." Appellant suggests that her threat was akin to "idle talk or jesting." There was no evidence that the note was written in jest or as a joke.

Because it is absurd and incredible to believe that the administration would bomb its own building, the fact finder could as easily find appellant's threat even more serious and imminent. The natural syllogism flowing from appellant's argument is that if the appellant did not bomb the nursing home, it would not get done.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant had the requisite intent to damage the nursing home and that she violated Code § 18.2-83.

For the foregoing reasons, we affirm the defendant's conviction.

<u>Affirmed.</u>