COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


JAMES C. SUMMERLIN
                                        OPINION BY
v.    Record No. 2071-00-1    JUDGE JEAN HARRISON CLEMENTS
                                      JANUARY 15, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
              Rodham T. Delk, Jr., Judge

        Schöen R. Parnell, Assistant Public Defender,
        for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (Randolph A. Beales, Attorney
        General, on brief), for appellee.


    James C. Summerlin was convicted in a bench trial of
threatening to bomb a building, in violation of Code § 18.2-83.
On appeal, he contends the trial court erred (1) in admitting
evidence regarding a voice-mail message left by him three days
before the purported threat was made and (2) in finding the
evidence sufficient to convict him of the charged crime although
the purported threat communicated neither malice nor an intent to
make a threat.  Finding no error, we affirm the conviction.

                    I.  BACKGROUND

    Under well-settled principles of appellate review, we view
the evidence and all reasonable inferences fairly deducible
therefrom in the light most favorable to the Commonwealth, the
prevailing party below.  Burlile v. Commonwealth, 32 Va. App.
796, 798, 531 S.E.2d 26, 27 (2000), aff'd, 261 Va. 501, 544

S.E.2d 360 (2001).  So viewed, the evidence established that, on April 10, 2000, Clarissa McAdoo, the executive director of the Suffolk Redevelopment and Housing Authority (SRHA), received a voice-mail message from Summerlin, for whom the authority was attempting to obtain housing.  According to McAdoo, Summerlin indicated in the message that he was "sick and tired of all the lies [SRHA was] telling," that SRHA was "not providing for [him] and [his] wife," and that "something [was] going to happen."

On April 13, 2000, at approximately 1:30 p.m., Summerlin called SRHA, asking to speak to Ms. Williams, an SRHA employee. When told by the receptionist, Patricia Riddick, that Williams was in a meeting, Summerlin became angry.  In a tone of voice that Riddick described as "yelling," Summerlin accused Riddick of being a racist.  He added that, based on his previous experience with Riddick's coworkers, all of the people at SRHA were racists and that SRHA had given his home to an African-American couple. When told again that Williams was in a meeting, Summerlin said "he would hate to have to blow the building up to get [SRHA's] attention."  Scared by Summerlin's remark, Riddick attempted to get the attention of her supervisor.

At that point, Mary Fortner, another receptionist, noting from Riddick's facial expression that she was scared, told her to put the caller on hold.  After Riddick told her about the caller, Fortner picked up the phone and spoke with Summerlin.  He asked for Williams and then told Fortner he had received a card in the mail regarding a meeting SRHA was having.  Fortner informed him that the meeting was for "people in Section 8 . . . to get together and have a discussion" and was not mandatory.  Summerlin

said he would not be attending the meeting and "was going to be discriminated against." He added that, if he came to the meeting, "things [would] be popping and a-rocking." When informed by Fortner that she would need to put him on hold to answer another call, Summerlin replied that would not be necessary and slammed down the phone. Fortner described Summerlin's tone of voice as being "[v]ery loud and angry."

Based on Summerlin's threatening phone call, the SRHA building was evacuated at approximately 1:40 p.m. and the fire department was called to the scene.

At trial, Summerlin objected to the admission of McAdoo's testimony concerning his April 10, 2000 voice-mail message, arguing that it was "not relevant to a charge that happened on the 13th of April." The trial court overruled the objection, finding that the evidence went to Summerlin's "state of mind." The trial court subsequently found that Summerlin, on April 13, 2000, threatened to bomb a building, as proscribed by Code § 18.2-83, and convicted Summerlin under that statute.

II.  RELEVANCE OF TESTIMONY REGARDING VOICE-MAIL MESSAGE

On appeal, Summerlin contends the trial court erred in allowing McAdoo to testify regarding the voice-mail message he left for her on April 10, 2000.  That message, Summerlin argues, having been received three days before the purported bomb threat was made, was not relevant to the charged offense.  We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant."  Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (quoting McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 629, 74 S.E.2d 165, 169 (1953) (internal quotations omitted)).

In this case, Summerlin's intent at the time he made the alleged threat was clearly in dispute.  The Commonwealth claimed that Summerlin's statement to Riddick that he "would hate to have to blow the building up to get [SRHA's] attention" constituted a threat to bomb a building, in violation of Code § 18.2-83.  Summerlin argued that, in making that statement, he was merely expressing an opinion and had no intent to make a threat to bomb the SRHA building.  Therefore, any evidence of Summerlin's state of mind at the time he made the alleged threat would be relevant to a subject of inquiry before the trial court.

As the trial judge correctly determined, Summerlin's statements in his April 10, 2000 message to McAdoo that he was "sick and tired of all the lies [SRHA was] telling," that SRHA

was "not providing for [him] and [his] wife," and that "something [was] going to happen" reflected Summerlin's state of mind as to SRHA.  Plainly, the challenged evidence demonstrated Summerlin's discontent with and animosity toward SRHA and his related intention to take some future action against SRHA.  Furthermore, the evidence concerned a message that was left a mere three days before the subject bomb threat was made and was not, therefore, so far removed in time from the charged offense as to render it irrelevant.  See Lafon v. Commonwealth, 17 Va. App. 411, 419, 438 S.E.2d 279, 284 (1993) (noting that, while remoteness is a factor that may be considered in determining the relevance of evidence of defendant's prior acts, such evidence should not be withheld "solely on the basis of remoteness unless the expanse of time has truly obliterated all probative value").

We find, therefore, that McAdoo's testimony concerning Summerlin's April 10, 2000 voice-mail message was relevant to the resolution of the issue of Summerlin's state of mind at the time of the charged offense.  See Parnell v. Commonwealth, 15 Va. App. 342, 348, 423 S.E.2d 834, 838 (1992) (holding that defendant's statement to police after his arrest, in which he again threatened victim, was admissible to prove his state of mind and corroborated evidence of his hostility toward victim).  Accordingly, we hold the trial court did not abuse its discretion in allowing the challenged testimony.  Hence, the trial court's ruling will not be disturbed.[1]

---

[1] Summerlin also argues, on appeal, that McAdoo's testimony regarding the April 13, 2000 message was not relevant to his state of mind because there was no testimony regarding his tone of voice or any reference by him to contemplated illegal action.

III.  SUFFICIENCY OF THE EVIDENCE

Summerlin further contends the evidence admitted at trial was insufficient as a matter of law to convict him of the charged offense.  The Commonwealth, he argues, failed to prove beyond a reasonable doubt that his statement to Riddick that "he would hate to have to blow the building up to get [SRHA's] attention" was made maliciously or communicated an intent to make a threat.

As noted, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987).  "In so doing, we must '. . . regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (internal quotations omitted)).  We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence.  Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).  We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the factfinder's determination."  Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993).

---

Thus, he concludes, the trial court could only improperly speculate as to what he was referring to in that message. However, because Summerlin did not raise these arguments at trial, he is barred by Rule 5A:18 from raising them for the first time on appeal.  See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  Moreover, the record does not reflect any reason to invoke the "good cause" or "ends of

                              A.   MALICE

     Summerlin argues the evidence was insufficient to sustain his

conviction because the Commonwealth did not prove malice.  This

argument presumes, in reliance on Perkins v. Commonwealth, 12 Va.

App. 7, 402 S.E.2d 229 (1991), that malice is a required element

of Code § 18.2-83.  We hold that it is not.

     In Perkins, we addressed, inter alia, the defendant's claim

that Code § 18.2-83 was unconstitutionally overbroad because it

did not "require any criminal mens rea, thus punishing one who

'jokingly' threaten[ed] such behavior."  Id. at 15, 402 S.E.2d at

234.  In finding the statute constitutional, we reasoned as

follows:

               In Maye v. Commonwealth, the Supreme
          Court of Virginia stated:

               A claim that a statute on its
          face contains no requirement of
          mens rea or scienter is no ground
          for holding the statute
          unconstitutional since such
          requirement will be read into the
          statute by the court when it
          appears the legislature implicitly
          intended that it must be proved.

          213 Va. 48, 49, 189 S.E.2d 350, 351 (1972).
          Therefore, Code § 18.2-83 can be read as
          requiring a criminal mens rea.  Such a
          narrowing construction of this statute
          prevents overbreadth.  Only an individual
          who maliciously "makes and communicates
          . . . any threat" prohibited by the statute
          will be punished.

Perkins, 12 Va. App. at 15, 402 S.E.2d at 234 (emphasis added)

(additional citations omitted).

_____

justice" exceptions to Rule 5A:18.

However, in Saunders v. Commonwealth, 31 Va. App. 321, 325-26, 523 S.E.2d 509, 511 (2000), we found that our statement in Perkins that "[o]nly an individual who maliciously 'makes and communicates . . . any threat' prohibited by the statute will be punished" was dicta and, thus, not binding.  In that case, Saunders was charged with writing and sending to another a letter that contained a threat to kill or do bodily injury to that person, in violation of Code § 18.2-60(A).  Relying analogously on our use of the word "maliciously" in Perkins, Saunders contended malice was an element of Code § 18.2-60(A), a statute similar to Code § 18.2-83.  Thus, he concluded, the trial court erred in refusing to instruct the jury on that element.

We disagreed, noting that the language in Perkins relied on by Saunders was dicta and that Code § 18.2-60(A) made no mention of malice.  Id.  We were "not persuaded that this Court in Perkins intended to equate mens rea with malice, a concept clearly at odds with well-established jurisprudence."  Id. at 326, 523 S.E.2d at 511.  Thus, we declined the "defendant's invitation to imply both mens rea and malice as elements of Code § 18.2-60(A)."  Id.  "'We may not,'" we noted, "'add to a statute language which the legislature has chosen not to include.'"  Id. (quoting County of Amherst Bd. of Supervisors v. Brockman, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982)).

Similarly, Code § 18.2-83 makes no mention of malice.  Thus,

adopting the rationale we applied in Saunders, we conclude that malice is not an element of Code § 18.2-83. Accordingly, proof only of Summerlin's mens rea, or unlawful intent, was required.

### B.  INTENT TO MAKE A THREAT

Summerlin also argues the evidence was insufficient to sustain his conviction because the Commonwealth did not prove that he intended to make a threat. The language he used did not, he argues, constitute a true threat. His statement to Riddick that "he would hate to have to blow the building up to get [SRHA's] attention" was nothing more, he asserts, than an expression of frustration. It did not, he claims, communicate a present intent to harm SRHA's property and no reasonable person could have believed it was an actual threat.

To establish a threat to bomb under Code § 18.2-83, the Commonwealth was required to prove Summerlin made and communicated to SRHA a "threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure." As we stated in analyzing this statute in Perkins:

> A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property. The communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expression of intent.

12 Va. App. at 16, 402 S.E.2d at 234. We further noted in Parnell that a threat is "an avowed present determination or intent to injure presently or in the future." 15 Va. App. at 345-46, 423 S.E.2d at 836-37. Code § 18.2-83, however, does not require the Commonwealth to prove that Summerlin intended to carry out his threat to bomb the SRHA building. Proof that he intended to make

and communicate the threat and that the threat was made and communicated satisfies the statutory requirement.  See Parnell, 15 Va. App. at 346-47, 423 S.E.2d at 837.

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).  "Intent may be shown by a person's conduct and by his statements."  Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989).  Moreover, "[i]n determining whether words were uttered as a threat[,] the context in which they were spoken must be

considered." Parnell, 15 Va. App. at 345, 347, 423 S.E.2d at 836-37.

Here, viewed in the light most favorable to the Commonwealth, the evidence established that, three days after leaving a message expressing his dissatisfaction with the way he was being treated by SRHA and announcing that "something was going to happen," Summerlin called SRHA, wanting to speak with Williams. When told by Riddick that Williams was unavailable to take his call, he became angry. Yelling, Summerlin accused Riddick and all of the people at SRHA of being racists and said "he would hate to have to blow the building up to get [SRHA's] attention." Summerlin's comment scared Riddick. Summerlin then told Fortner in a "loud and angry" tone of voice that he would not be attending a particular meeting at SRHA, but, if he did, "things [would] be popping and a-rocking." Following Summerlin's call, SRHA called the fire department and evacuated the building.

In light of the manifest anger and hostility expressed by Summerlin toward SRHA during his exchange with Riddick and in his communications with McAdoo and Fortner, we conclude that the trial court, as the finder of fact, was entitled to infer from this evidence (1) that, based on the context in which it was spoken, Summerlin's remark about bombing the SRHA building constituted a communication avowing a present intent on Summerlin's part to do harm to SRHA's property, (2) that Summerlin intended to make that communication, and (3) that the staff of SRHA reasonably believed that Summerlin intended to bomb their building. Accordingly, we hold that the evidence presented was sufficient to prove beyond a reasonable doubt that Summerlin

made and communicated to SRHA a threat to bomb a building with the requisite unlawful intent to make and communicate such a threat, in violation of Code § 18.2-83.

For the foregoing reasons, we affirm Summerlin's conviction.

<u>Affirmed.</u>