COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton and Bumgardner
Argued at Richmond, Virginia


JEREMY DION DIMAIO
                                                          OPINION BY
v.        Record No. 2851-04-2           CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                        NOVEMBER 15, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LUNENBURG COUNTY
Leslie M. Osborn, Judge

G. Russell Stone, Jr. (Cary B. Bowen; Bowen, Champlin, Carr,
Foreman & Rockecharlie, on brief), for appellant.

Denise C. Anderson, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Jeremy Dion DiMaio (appellant) was found guilty in a bench trial of computer fraud,

computer trespass, embezzlement and attempted extortion in violation of Code §§ 18.2-152.3,

18.2-152.4,[1] 18.2-111, and 18.2-59, respectively.  Appellant argues that the evidence was

insufficient to prove:  (1) the value of the computer records, (2) the value of the non-compete

agreements, (3) that he attempted to commit extortion and (4) that he possessed the requisite

criminal intent for each charged offense.  We hold that the evidence was sufficient and affirm the

decision of the trial court.

---

[1] While appellant contended in his brief that the evidence did not prove that property was
damaged for the purpose of misdemeanor computer trespass, counsel conceded at oral argument
that Code § 18.2-152.4 did not include such a requirement for a misdemeanor conviction.  Thus,
we need not address that issue.

I.  BACKGROUND

We view the evidence in the light most favorable to the Commonwealth, regarding as true all credible evidence supporting the Commonwealth's position.  Summerlin v. Commonwealth, 37 Va. App. 288, 294-95, 557 S.E.2d 731, 735 (2002).

So viewed, the evidence establishes that S & M Brands, Inc. (S & M) employed appellant as its human resource director.  In 2003, appellant secured a $6,000 loan from S & M that he agreed to repay, by deductions from his paycheck, beginning in January 2004.

On April 7, 2004, appellant announced his resignation and gave an anticipated departure date of April 23, 2004.  After appellant submitted his resignation, S & M discovered that on two occasions appellant had contacted the payroll department and directed them not to deduct the loan funds from his paycheck.  This occurred once before the January 2004 deduction was scheduled to occur and once before the February 2004 deduction was to occur.  S & M agreed to extend the period of repayment so long as appellant paid the company his vacation check and his last payroll check.  However, appellant ordered the payroll department to make both checks directly payable to him.  When S & M discovered this on April 15, S & M terminated appellant's employment and ordered him to immediately leave the building.

After appellant announced his intention to resign, he transferred over 829 files from his computer at work to a secure third party server and deleted the files from his work computer.  Appellant was the only person who knew the password to the server.  Appellant testified that he did this so that he could organize the files at home to make the transition for the new human resource employee easier.  He told at least one other employee in the office that he was moving the files.  After appellant left, William Snell (Snell), vice-president and chief financial officer of S & M, assumed appellant's position and discovered that all of the company's essential human resource computer files were missing.  The missing files included business forms and templates,

such as employee agreements, offer letters, sales manuals, insurance forms and non-compete agreements.

When Snell contacted appellant, Snell testified that appellant said "he would be willing to provide the files to the company under the right circumstances," namely establishing an agreement to "return the files in exchange for forgiveness of the debt." Appellant denied this conversation. Appellant also later met Mike Mills, the information technology director for S & M, and told him not to bother looking for the files on his work computer, because they would not be there. The appellant was not authorized to move the files to another computer.

When police officers came to appellant's house to execute a search warrant, appellant gave them the password and allowed them to access the missing files on his home computer. The officers also found various human resource documents at his house, including seventy to ninety non-compete agreements and copies of S & M's employee handbook.[2] The non-compete agreements were ordinarily located in each employee's file at S & M, and appellant had to manually remove them from each file in order to transfer them to his house. Appellant had no permission to remove these files from the company.

At a bench trial on September 7, 2004, Stephen Bailey (Bailey), president of S & M, testified, inter alia, that employees were paid from $800 to $1,000 to sign the non-compete agreements; that the employee handbook was worth $5,000; that the value of a non-compete agreement would be about $6,000; that two particular computer files would cost $11,000; and that all of the computer files together would cost in excess of $100,000. He based these opinions on the replacement cost to the company. Snell also opined that it would cost tens of thousands of dollars to replace the missing employee files.

---

[2] At least two of the missing non-compete documents were never recovered by S & M.

In addition to the testimony of the company's president, E.W. Gee, III (Gee), in-house counsel for S & M since 2001, testified that the non-compete agreements were worth approximately $5,000 to $7,000, based on the cost to create the initial documents. When asked at what price he would sell the non-compete form, he answered "$5,000 or $6,000 or $7,000" simply for the documents. He also stated that the total cost to replace the computer files would be in excess of $50,000, and at the very least, to repurchase basic software would cost nearly $3,790.

After hearing this evidence, the trial judge found appellant guilty of computer fraud, computer trespass, embezzlement, and attempted extortion.[3]

## II.  ANALYSIS

Appellant argues that the evidence was insufficient to prove four separate items:  the value of the computer records for the purposes of computer fraud; the value of the non-compete agreements and other human resource documents for embezzlement; that appellant threatened S & M for attempted extortion; and the criminal intent of the appellant for each offense.  We disagree, and affirm the judgment of the trial court.

We review the evidence in the light most favorable to the Commonwealth, "'granting to it all reasonable inferences fairly deducible therefrom'" and regarding as true all credible evidence supporting the Commonwealth's position. Summerlin, 37 Va. App. at 294-95, 557 S.E.2d at 735 (citations omitted).  We will not disturb a factual finding unless it is "plainly wrong or unsupported by the evidence." Riner v. Commonwealth, 268 Va. 296, 320, 601 S.E.2d 555, 568 (2004).  Further, the credibility of witnesses, the weight accorded to their testimony,

---

[3] The trial court reconsidered the issue of guilt as to the felony computer trespass on November 17, 2004, and determined that appellant was guilty of misdemeanor, and not felony, computer trespass.

and any inferences drawn from proven facts are matters "'solely for the factfinder's determination.'" Id. (citations omitted).

## A. COMPUTER FRAUD – VALUE

Code § 18.2-152.3 distinguishes between two classes of computer fraud: "[i]f the value of the property or services obtained is $200 or more, the crime of computer fraud shall be punishable as a Class 5 felony," but where the value is under $200, the crime is punishable as a Class 1 misdemeanor.[4] Appellant contends that the trial court erred in convicting him of felony computer fraud because the evidence failed to prove the value of the files transferred from his computer at work to the third party server.

Where the value of a thing "determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount." Wright v. Commonwealth, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954); see also Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994) ("The value of the goods specified in the statute is an essential element of the crime, and the Commonwealth must prove that element beyond a reasonable doubt."). This does not require an exact dollar amount to be proven, however. Wright, 196 Va. at 139, 82 S.E.2d at 607 (upholding the conviction where

---

[4]    Any person who uses a computer or computer network, without authority and:

1. Obtains property or services by false pretenses;
2. Embezzles or commits larceny; or
3. Converts the property of another; is guilty of the crime of computer fraud.

    If the value of the property or services obtained is $ 200 or more, the crime of computer fraud shall be punishable as a Class 5 felony. Where the value of the property or services obtained is less than $ 200, the crime of computer fraud shall be punishable as a Class 1 misdemeanor.

Code § 18.2-152.3.

"neither the exact number of dollars stolen . . . nor the exact number of dollars received" was shown). The value of the item is measured as of the time of the fraud, and is assessed only as to the parts affected, and not the entire property of which the item is a part. Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483-84 (1997).

There are a number of ways to prove the value of an asset. It can be established by a lay opinion of the property's fair market value, Crowder v. Commonwealth, 41 Va. App. 658, 664 n.3, 588 S.E.2d 384, 387 n.3 (2003), by an expert's opinion, Kern v. Commonwealth, 2 Va. App. 84, 88, 341 S.E.2d 397, 399-400 (1986), or by traditional accounting principles, starting with the original cost of the item and then factoring in depreciation or appreciation, Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981). Where an item has no market value, its actual value must be shown. Lund v. Commonwealth, 217 Va. 688, 232 S.E.2d 745 (1977).

Generally, "the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property, regardless of the owner's knowledge of property values." Walls, 248 Va. at 482, 450 S.E.2d at 364. Another non-expert, non-owner, may testify "provided the witness possesses sufficient knowledge of the value of the property or has had ample opportunity for forming a correct opinion as to value." Id. at 483, 450 S.E.2d at 365.

Bailey, the president of S & M, testified that two particular computer files would cost $11,000 and that all of the computer files together would cost in excess of $100,000. Snell, vice-president and chief financial officer, opined that it would cost tens of thousands of dollars to replace the missing files. Gee, in-house counsel and drafter of a number of the documents in the computer files, stated that the total cost to replace the computer files would be in excess of $50,000. He testified that at a minimum, it would cost approximately $3,790 to replace the basic

software forms. All three men's testimony was competent, as they had the requisite experience with the items to form a valid opinion as to value, and their opinions were uncontroverted. Bailey and Snell, as key executives, were familiar with the computer system and the value of items on that system. Gee wrote or reviewed many of the documents that were transferred, and thus had firsthand knowledge of their value.

Appellant relies on Lund to support his argument that the Commonwealth failed to prove value. Lund is distinguishable from this case. In Lund, the Supreme Court reversed a larceny conviction because the goods taken "had no ascertainable monetary value." 217 Va. at 693, 232 S.E.2d at 748. The Court noted that the cost of producing the stolen items was not the proper method of valuation, but rather actual value was the proper measure. Id. at 692, 232 S.E.2d at 748. In this case the computer files had actual value to the company. The president, vice-president, and in-house counsel to S & M all testified that the computer files, standing alone, were worth considerably more than the threshold felony amount of $200. Therefore, Lund does not control the analysis in this case.

The trial court weighed the credibility of those witnesses, the basis of their knowledge of the records and computer system, and their experience with the company, and found that their testimony established that the computer files that appellant removed from the company computer system were worth more than $200. The evidence supports the trial court's finding beyond a reasonable doubt.

### B. EMBEZZLEMENT – VALUE

Appellant next contends that the trial court erred in convicting him of felony embezzlement because the evidence was insufficient to prove that the value of the non-compete agreements and other human resource documents found at his home was greater than $200.

Embezzlement, like computer fraud, carries a greater punishment if the value of goods

embezzled is more than $200. Code §§ 18.2-111, 18.2-95.[5]

The analysis of value for the computer files is identical to the analysis for the

non-compete agreements: the Commonwealth must prove that the value of the agreements was

greater than $200 and can prove value in any probative way. Wright, 196 Va. at 139, 82 S.E.2d

at 607. The Commonwealth proved both market and actual value.

Bailey stated that the value of a non-compete agreement would be about $6,000. He

testified that the employee handbook would cost "in excess of $10,000. We're talking about fair

market value at this point." Gee, who drafted the non-compete agreement, testified that the

non-compete agreements were worth $5,000 to $7,000, based on the cost to create the

documents. However, in response to a question about how much one of the non-compete

agreements would cost if it were to be sold to someone else, Gee remarked "the form itself,

again, $5,000 or $6,000 just for the form." Gee also noted that much of the value in the

agreements was evidentiary—while the agreements could be enforced without the actual signed

paper, it would be more difficult and more costly to do so. Both men were familiar with the

---

[5] Code § 18.2-111 provides that

> [i]f any person wrongfully and fraudulently use, dispose of,
> conceal or embezzle any money, bill, note, check, order, draft,
> bond, receipt, bill of lading or any other personal property, tangible
> or intangible, which he shall have received for another or for his
> employer, principal or bailor, or by virtue of his office, trust, or
> employment, or which shall have been entrusted or delivered to
> him by another or by any court, corporation or company, he shall
> be guilty of embezzlement. Proof of embezzlement shall be
> sufficient to sustain the charge of larceny. Any person convicted
> hereunder shall be deemed guilty of larceny and may be indicted as
> for larceny and upon conviction shall be punished as provided in
> § 18.2-95 or § 18.2-96.

employee handbook, the non-compete agreements, and the cost to the company to replace the documents as well as what they were worth on the open market.

Based on this evidence, the trial court determined that the value of the non-compete agreements and other human resource documents found at appellant's house was more than $200. The evidence proves beyond a reasonable doubt the value of the non-compete agreements.

## C. ATTEMPTED EXTORTION

Appellant next argues that the trial court erred in convicting him of attempted extortion, in violation of Code § 18.2-59, because the evidence was insufficient to prove that he made a threat. Code § 18.2-59 makes it a felony for any person to "threaten injury to the character, person, or property of another person . . . and thereby extort money, property, or pecuniary benefit."[6] A threat is a communication relaying an intention to injure another's person or property which, taken in context, reasonably causes the listener to believe that the speaker will carry out his intention. Summerlin, 37 Va. App. at 297, 557 S.E.2d at 736. "In determining whether words were uttered as a threat the context in which they were spoken must be considered." Parnell v. Commonwealth, 15 Va. App. 342, 345, 423 S.E.2d 834, 836 (1992). The court, as a result, must view the totality of the circumstances under which the statement was made. A threat need not be direct—it may be a "'veiled statement[] nonetheless implying injury to the recipient when viewed in all the surrounding circumstances.'" Keyes v. Commonwealth, 39 Va. App. 294, 302, 572 S.E.2d 512, 516 (2002) (citations omitted).

---

[6] Code § 18.2-59 mandates that

> [i]f any person threaten injury to the character, person, or property of another person or accuse him of any offense and thereby extort money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, he shall be guilty of a Class 5 felony.

Snell testified that when he called appellant after his termination to discuss the missing files, appellant stated "he would be willing to provide the files to the company under the right circumstances" and that he would "return the files in exchange for forgiveness of the debt." Appellant denied making those statements. The facts belie this assertion. Appellant had previously attempted to cancel his debt to S & M by directing payroll not to deduct the monthly payments from his paycheck on two separate occasions. Appellant told the information technology director "don't bother looking for the files, because they're not there." However, appellant did not have permission to remove the files from the company. The computer files were, in fact, located on a third party server for which only appellant knew the password. S & M had no way of accessing any of their human resource documents, nor was S & M able to retrieve their employees' non-compete agreements until a search warrant of appellant's home was executed. Appellant, in effect, intended to keep the information and files hostage until his $6,000 debt was wiped out.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trial court, having heard the testimony of both witnesses, believed Snell and disbelieved appellant. Credible evidence proved beyond a reasonable doubt that appellant made threats to try to gain a pecuniary benefit. Given the words used in the context of appellant's actions, it is clear that appellant demanded that his $6,000 debt be forgiven before he would allow S & M access to the computer files on the third party server or return the other documents.

### D. APPELLANT'S INTENT

Lastly, appellant contends that the trial court erred in convicting him of any of the charges because the Commonwealth failed to prove the requisite criminal intent.

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind of an accused may be shown by his acts and conduct." Sandoval, 20 Va. App. at 137, 455 S.E.2d at 732 (citations omitted); see also Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968). Circumstantial evidence is as competent as direct evidence. Wright, 196 Va. at 137, 82 S.E.2d at 606. Furthermore, the inferences to be drawn from proved facts are within the province of the court trying the case, so long as they are reasonable. Johnson, 209 Va. at 295, 163 S.E.2d at 574.

In order to prove attempted extortion, the Commonwealth was required to establish that the defendant had the specific intent to commit extortion. Johnson, 209 Va. at 293-94, 163 S.E.2d at 573. Embezzlement requires the intent to deprive, as is evidenced by the exercise of unauthorized exercise of dominion and control over another's property. Dove v. Commonwealth, 41 Va. App. 571, 577, 586 S.E.2d 890, 893 (2003). Larceny also requires the intent to permanently deprive the owner of possession. Smith v. Commonwealth, 222 Va. 646, 649, 283 S.E.2d 209, 210 (1981).

The evidence proved beyond a reasonable doubt appellant's criminal intent in each instance. Appellant downloaded 829 human resource documents onto a third party server on the day he gave notice that he was going to resign. He had no authorization to remove the files. He then deleted all of the files from his work computer. He alone controlled any future access to the files, and he denied access to the files to any S & M representative. He told the information technology director as well as the person assuming his position that the files were not on the computer. He refused to return the data unless his loan was forgiven. The files were not recovered until the police executed a search warrant at appellant's house. In addition, appellant manually removed the non-compete agreements from each employee's file and took them home. Some agreements were never recovered.

In reviewing the evidence, the trial court noted that appellant's "explanation for why he did all of these things, when you look at it in total, simply is unbelievable." The trial judge noted that "it doesn't make any sense" to transfer the files to a third party server and completely delete them from a work computer if appellant had any innocent purpose. The trial judge concluded that "I don't think there is any question that there was criminal intent." We agree.

Viewed as a whole, the evidence clearly proves that appellant's intent was to wrongfully remove and retain the records and files of S & M and to use the removal as a threat to the company to forgive his outstanding debt. Therefore, the trial court's finding that the element of intent had been satisfied with regard to all charges is supported by evidence beyond a reasonable doubt.

For the foregoing reasons, we hold that the evidence was sufficient to uphold appellant's convictions. Thus, we affirm the judgment of the trial court.

<u>Affirmed.</u>