COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Senior Judges Willis and Annunziata
Argued by teleconference


DEBORAH KAY STOUT

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 1652-06-4          CHIEF JUDGE WALTER S. FELTON, JR.
                                                       JANUARY 29, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CLARKE COUNTY
John R. Prosser, Judge

        David L. Hensley (E. Eugene Gunter; Law Office of E. Eugene
        Gunter, on briefs), for appellant.

        Craig W. Stallard, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Following a jury trial, Deborah Kay Stout ("appellant") was convicted of first-degree

murder of Frank Owens and conspiracy to commit that offense, use of a firearm in the

commission of that murder, attempted malicious wounding of Owens, and conspiracy to commit

that offense.  On appeal, she contends the trial court erred in admitting the Commonwealth's

gunshot residue evidence and that "such evidence did not comport with the other evidence

offered by the Commonwealth."  She also contends the trial court erred in rejecting her proffered

jury instruction relating to the *mens rea* requirement for a principal in the second degree.

                                    I.  BACKGROUND

        Because the parties below are conversant with the record in this case, and this opinion

carries no precedential value, we cite only those facts necessary for the disposition of the appeal.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). We must also "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Craddock v. Commonwealth, 40 Va. App. 539, 542-43, 580 S.E.2d 454, 456 (2003) (quoting Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003)). So viewed, the evidence established that on July 12, 2004, appellant, then forty-one years old, asked her twenty-three-year-old tenant, David Grizzel, with whom she had recently begun a sexual relationship that involved cocaine use, to kill Owens. Appellant and Owens were in an on-again, off-again romantic relationship. At her direction, Grizzel previously had disabled the brakes on Owens' truck. Owens was not injured when his brakes failed.

Grizzel agreed to kill Owens, and that same afternoon he purchased a .32 caliber pistol with money given to him by appellant for that purpose. Immediately after Grizzel bought the gun, he showed it to appellant, who briefly held it.[1]

Earl Warren, appellant's long-time friend and tenant, who had previously assisted Grizzel in disabling Owens' brakes, drove Grizzel to Owens' house that night so that Grizzel could kill him. Consistent with their plan to kill Owens, appellant preceded Grizzel and Warren to Owens' house, and was in the bedroom when Grizzel rang the front door bell.[2] Owens answered the door, and Grizzel shot him with the recently purchased pistol and stabbed him multiple times with a knife. When they were certain Owens was dead, appellant told Grizzel to leave and that

---

[1] The Commonwealth contended that appellant acquired gunshot residue on her hand at this time.

[2] According to the plan he formed with appellant, if Owens came to the door Grizzel was to kill him, but if appellant came to the door, he was to leave without killing Owens.

she would "take care of it from [t]here."  Grizzel and Warren then left Owens' house and disposed of the gun and the knife, neither of which was recovered by police.

After Grizzel murdered Owens and departed with Warren, appellant left Owens' house and proceeded to a neighboring house, where Owens' neighbors called 911.  A gunshot residue test performed later that night revealed a microscopic particle of gunshot residue on appellant's hand.

Appellant denied she was involved in disabling the brakes on Owens' truck or in his murder, but admitted being in Owens' home when Grizzel killed him.  She testified that she heard gunfire, grabbed a puppy she had with her, went out the sliding glass door connecting Owens' bedroom to his back porch, jumped from the porch to the ground, some eleven feet below to a sharply inclined slope, holding her purse and the puppy, and then made her way through the woods to the neighbor's house.

After Owens' funeral, appellant, Grizzel, and Warren traveled together to Florida.  Some months later, Warren informed police that Grizzel disabled Owens' brakes and later murdered him, admitting that he drove Grizzel to the scene on each occasion.  Prior to appellant's trial, Grizzel pled guilty to the attempted murder of Owens by disabling the brakes on his truck, and to his first-degree murder.  Both Grizzel and Warren testified for the Commonwealth at appellant's trial.

Appellant sought to exclude evidence of the gunshot residue discovered on her hand on the night Grizzel murdered Owens.  She argued that evidence was not relevant to prove she shot Owens because the Commonwealth asserted that Grizzel shot Owens.  She also argued that admitting the gunshot residue evidence would mislead the jury into believing she fired a gun the day Owens was murdered.  The trial court admitted the gunshot residue evidence, finding it

relevant to corroborate Grizzel's testimony that appellant held the gun they purchased to kill Owens hours before he was shot.

After the presentation of evidence, appellant proffered a jury instruction that told the jury that in order for it to find appellant was an "aider and abettor" to Grizzel's shooting of Owens, it must find that she "shared in the criminal intent of the principal." The trial court rejected appellant's proffered instruction, ruling that the applicable law therein governing principals in the second degree was "covered by other instructions of the Court."

## II.  ANALYSIS

### A.  Admissibility of the Gunshot Residue Evidence

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Summerlin v. Commonwealth, 37 Va. App. 288, 293, 557 S.E.2d 731, 734 (2002) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).  Evidence is relevant when it has a "logical tendency, however slight, to prove a fact at issue in the case." Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004).

Throughout the trial the Commonwealth contended that Grizzel shot Owens and that appellant was an accomplice to Owens' murder, either as an accessory before the fact or a principal in the second degree, not a principal in the first degree.[3]

---

[3] In a felony case,

> [a] principal in the first degree is the actual perpetrator of the crime.  A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime.  In order to make a person a principal in the second degree actual participation in the commission of the crime is not necessary.  The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime.  If he was present lending countenance, or otherwise aiding while

- 4 -

Here, the presence of gunshot residue on appellant's hand tended to prove appellant had some contact with a gun on the day of the murder. That evidence was relevant to impeach appellant's testimony that she did not come in contact with a gun on the day of the murder, and to corroborate Grizzel's testimony that appellant held the .32 caliber pistol they purchased with money that appellant provided on the day of the murder in furtherance of their plan to murder Owens that evening. Moreover, impeachment of appellant's statement that she had no contact with a gun on the day of Owens' murder bolstered the credibility of Grizzel, who stood impeached by his confessed complicity in Owens' murder. See Largin v. Commonwealth, 215 Va. 318, 319, 208 S.E.2d 775, 776 (1974).

Appellant contends that the gunshot residue evidence, even if relevant, was more prejudicial than probative, as its admissibility misled the jury to believe she fired a gun on the day Owens was murdered. The record does not support appellant's contention, however. The Commonwealth's evidence throughout the trial consistently proved that Grizzel, and not appellant, fired the gun that killed Owens.[4]

We cannot find, based on this record, that the trial court's decision to admit evidence that appellant had gunshot residue on her hand, shortly after Owens was murdered, was an abuse of discretion.

---

another did the act, he is an aider and abettor or principal in the second degree.

Jones v. Commonwealth, 208 Va. 370, 372-73, 157 S.E.2d 907, 909 (1967).

[4] Appellant also argues the gunshot residue evidence caused the jury to erroneously determine the testimony given by Grizzel and Warren was more credible than her testimony, in which she denied any involvement in the murder of Owens. Pursuant to Code § 17.1-407(D), a three-judge panel of this Court previously denied appellant's question presented on that ground, and we do not consider it here.

B. Jury Instruction

"The trial judge has broad discretion in giving or denying instructions requested." Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "'When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.'" Gaines, 39 Va. App. at 568, 574 S.E.2d at 778 (quoting Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)); Hubbard v. Commonwealth, 243 Va. 1, 16, 413 S.E.2d 875, 883 (1992).

Appellant argues the trial court erred in not granting her proffered instruction that to find her to be a principal in the second degree, the jury must find that she shared the criminal intent of the principal in the first degree. She argues that because the Supreme Court approved the proffered instruction in Rasnake v. Commonwealth, 135 Va. 677, 115 S.E. 543 (1923), a case which she asserts has "not been overruled or modified or distinguished," the trial court erred by not granting that identical instruction here. We find no merit in appellant's argument.[5]

Here, Instruction 12, granted by the trial court, told the jury that in order for it to find appellant guilty as a principal in the second degree, it must find that she "intended her words, gestures, signals, or actions to in some way encourage, advise, or urge or in some way help the person committing the crime to commit it" and that a principal in the second degree is liable for the same punishment as the person who actually committed the crime. Instruction 13 instructed

---

[5] We note that the Supreme Court, in Rasnake, affirmed the use of the instruction proffered by appellant as read together with the other instructions, and in light of the evidence presented in that case. Rasnake, 135 Va. at 708, 115 S.E. at 553.

the jury that "[a] person is considered present at the scene of the crime if he was in a place to render assistance in the commission of the crime." Instruction 15 told the jury that "[a]n accessory before the fact is one who was not present at the time of the commission of the crime[,] but who[,] before the commission of the crime in some way planned, advised, or assisted in the commission of the crime[,] knowing or having reason to know of the intent of the princip[al] to commit the crime" and that "[a]n accessory before the fact is liable for the same punishment as the person who actually committed the crime."

Instruction 31, granted at appellant's request, instructed the jury that if it found from the evidence that Grizzel alone killed Owens, that appellant could not be convicted of the murder if appellant was at the scene and did not conspire, aid or abet in the killing. Instruction 32, also granted at appellant's request, told the jury that the mere presence of appellant at the time of the murder of Owens was not alone sufficient to justify a conviction.

When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle. Gaines, 39 Va. App. at 568, 574 S.E.2d at 778. Here, the instructions granted to the jury fully and fairly covered the principles of law relevant to the question of whether appellant aided and abetted Grizzel in the murder of Owens. Accordingly, we conclude from our review of the record, considering the evidence and other instructions granted, that the trial court did not abuse its discretion in refusing to grant appellant's proffered instruction.

### III.  CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.  We conclude the trial court did not err in admitting evidence of gunshot residue on appellant's hand on the night of the murder and that it did not err in refusing to grant appellant's proffered jury instruction.

<u>Affirmed.</u>