COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Felton
Argued at Salem, Virginia


RANDALL J. KEYES, S/K/A
 RANDALL JACK KEYS
                                          OPINION BY
v.    Record No. 3338-01-3        JUDGE WALTER S. FELTON, JR.
                                        NOVEMBER 26, 2002
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                    Thomas H. Wood, Judge

         William E. Bobbitt, Jr., Public Defender, for
         appellant.

         Steven A. Witmer, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General, on
         brief), for appellee.


     Randall Keyes was convicted in a jury trial of sending a

threatening letter, in violation of Code § 18.2-60(A).  On appeal,

he contends the trial court erred in finding that:  (1) the letter

was sent as required by Code § 18.2-60(A); (2) the evidence was

sufficient to prove the letter contained a threat to kill or do

bodily harm as required by Code § 18.2-60(A); (3) the evidence of

his prior conviction for the attempted rape of Roslyn Carter could

be presented to the jury; and (4) in refusing to give an

instruction that defined the elements of stalking.  For the

following reasons we affirm the judgment of the trial court.

## I.  BACKGROUND

On February 27, 2001, Lucille Pullin, an employee of Augusta Correctional Center, was sorting outgoing mail when she found an envelope bearing a return address from Randall Keyes and addressed to Roslyn Carter.  In 1998, Keyes attempted to rape Ms. Carter.  Pursuant to instructions she previously received, Ms. Pullin removed the letter and forwarded it to Sgt. Wayne Thompson, the institutional investigator at Augusta Correctional Center.

Sgt. Thompson opened the letter and contacted Special Agent Ron Hall of the Department of Corrections' Inspector General's Office.  Special Agent Hall examined the letter and submitted it to the Division of Forensic Science, along with handwriting samples from Keyes, for handwriting analysis.  Richard Horton, a forensic document examiner, determined that the handwriting on the envelope was quite comparable and similar to the known samples of Keyes' writing.  Furthermore, Horton testified that the indented writing found on the letter paper within the envelope resulted from an original writing by Keyes.[1]

---

[1] According to Horton, "indented writing is caused . . . when a person writes for example on a notepad and there are indentations . . . underneath into the pages below."  Horton possesses equipment that allows him to look at totally invisible indentations typically down to six or seven pages on a pad.

The letter itself, pasted together using materials cut from other documents, when read from top to bottom and left to right, stated:

> TARGET
>
> FEEL THE RAW NAKED POWER OF THE/DICK ON THE
> RISE/HE'S HOT, SEXY,/  How many times you
> wanna f***?/  LET THE hardcore porn
> BEGIN . . ./ OR KISS YOUR ASS GOODBYE.
>
> THE NIGHTMARE CHILD

The letter also contained a picture depicting a partially unclothed man wearing a mask or article of clothing covering the bottom part of his face.

The envelope containing the letter was addressed to Ms. Carter.  Keyes' return address was placed in the upper left corner and the words "Legal Mail" were written in the upper right corner to assure delivery.[2]

At trial, prior to opening statements, Keyes moved to exclude any evidence of his prior conviction for the attempted rape of Ms. Carter.  The trial court overruled the objection, stating:

> It is my understanding that the only
> evidence that the Commonwealth has as to the
> source of this [letter] would be from
> the . . . handwriting expert or that the

---

[2] Pursuant to Virginia Department of Corrections, Division Operating Procedure 851, Attachment #1, "'Legal mail' may be opened only in [the prisoner's] presence to be checked for contraband . . . .  Other mail will be opened and may be read by the staff."  As provided by Division Operating Procedure 851.5.D, "All inmates shall receive the equivalent of up to ten (10) first class stamps for legal correspondence per week."

-

defendant doesn't admit sending this letter. So, it, it seems to me that the Commonwealth is going to have to prove the identity of the person that composed or, and sent or tried to send this letter and . . . gentlemen, this man, it's my understanding, I've been lead [sic] to believe that he was convicted of attempted rape of this Ms. Carter and the, this threatening document has very definite sexual overtones and for, for the purpose of proving his identity only, that's the reason I'm going to let it in. Otherwise, I wouldn't. If, if the Commonwealth didn't have a problem or an issue about proving his identity, I'd, I would agree with you, Mr. Bobbitt [Keyes' attorney], because I don't think it comes in for any other purpose but it does come in to the extent that it would corroborate the testimony of the expert witness so that's the reason I'm doing it, letting it in.

On December 2, 2001, Keyes was convicted of sending a threatening letter, in violation of Code § 18.2-60(A).[3]

---

[3] At the time of Keyes' offense, Code § 18.2-60 provided:

> If any person write or compose and also send or procure the sending of any letter, inscribed communication or electronically transmitted communication producing a visual or electronic message, so written or composed, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or do bodily injury to the person to whom such letter or communication is sent . . . the person so writing or composing and sending or procuring the sending of such letter or communication shall be guilty of a Class 6 felony . . . .

The 2001 and 2002 Sessions of the General Assembly enacted amendments to Code § 18.2-60 subsequent to Keyes' violation.

## II. ANALYSIS

> When the sufficiency of the evidence is challenged on appeal, it is well established that we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The conviction will be disturbed only if plainly wrong or without evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).

### A. SENDING A LETTER

We first consider whether the evidence was sufficient to establish that Keyes sent or procured the sending of the letter when he placed it in the institutional mail.

In Houston v. Lack, 487 U.S. 266 (1988), the Supreme Court was asked to decide whether a prisoner's notice of appeal was to be considered filed at the moment of delivery to prison authorities for forwarding to the appropriate court or at some later point in time. Prentiss Houston drafted a notice of appeal after his petition for a writ of habeas corpus was denied. Twenty-seven days after the entry of the court's judgment, Houston deposited the notice of appeal with the prison authorities for mailing. The notice of appeal was mailed and arrived at the federal district court thirty-one days after the entry of the judgment, one day after the expiration of the thirty-day filing period.

-

The Court held that a notice of appeal is filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk. Houston, 487 U.S. at 276. It reasoned that a "prisoner has no choice but to hand his notice over to prison authorities for forwarding to the clerk." Id. at 275. "[T]he moment at which . . . prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk." Id. See generally Frieden v. Cluett, Peabody & Co., 142 Va. 738, 747-48, 128 S.E. 61, 64 (1925) (letter properly addressed and put in the post office or delivered to the postman is presumed to reach its destination).

The same rationale applies in this case. Keyes sent the letter or procured its sending, as required by Code § 18.2-60(A), when he placed it into the institutional mail. He properly addressed the envelope and deposited it in the institutional post office as legal mail to ensure postage and delivery. In order for the letter to be mailed, Keyes had no choice but to turn it over to prison officials. Once the letter was no longer within his control, delivery was complete. Under the version of Code § 18.2-60(A) in effect at the time Keyes acted, it was not necessary for the letter to reach its intended target or for her to read it. Consequently, the evidence was sufficient to establish that Keyes sent the letter.

B.   LETTER CONTAINED A THREAT

We next consider whether the evidence was sufficient to prove that the letter contained a threat to kill or do bodily injury, as required by Code § 18.2-60(A).

> "A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property.  The communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expression of intent."

Summerlin v. Commonwealth, 37 Va. App. 288, 297, 557 S.E.2d 731, 736 (2002) (quoting Perkins v. Commonwealth, 12 Va. App. 7, 16, 402 S.E.2d 229, 234 (1991)).  "[A] threat is 'an avowed present determination or intent to injure presently or in the future.'" Id. (quoting Parnell v. Commonwealth, 15 Va. App. 342, 345-46, 423 S.E.2d 834, 836-37 (1992)).  "Threats of physical harm need not be directly expressed, but may be contained in 'veiled statements' nonetheless implying injury to the recipient when viewed in all the surrounding circumstances."  State v. McGinnis, 243 N.W.2d 583, 589 (Iowa 1976).  In its particular context, Keyes' letter expressed a threat to kill or do bodily harm to Ms. Carter.

First, the letter was addressed to Ms. Carter, with whom Keyes has a history.  He was convicted three years prior for the attempted rape of Ms. Carter.  Second, the letter was written

-

using cutout words and phrases and signed, "The Nightmare Child" in an effort to conceal the author's identity.

Third, the salutation of the letter addresses Ms. Carter as "Target." The letter continues, stating, "Feel the raw naked power of the dick on the rise." Keyes implicitly implies that she will feel his raw sexual power and then asks her, "how many times you wanna f***?" The letter concludes, "let the hardcore porn begin . . . or kiss your ass goodbye," indicating his present determination to rape or kill Ms. Carter in the future.

Finally, Keyes placed the words "legal mail" on the envelope. The purpose was to reduce the possibility that his letter would be detected and assure it had postage to reach its intended target. This fact strengthens the evidence of his criminal purpose.

Placing the letter in its particular context, the evidence was sufficient for a jury to conclude the letter contained a threat to kill or do bodily injury to Ms. Carter.

### C.   ADMISSION OF PRIOR CONVICTION

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994). "Generally, evidence that a defendant has committed crimes other than the offense for which he is being tried is highly prejudicial and inadmissible." Hackney v. Commonwealth,

-

28 Va. App. 288, 293, 504 S.E.2d 385, 388 (1998).  However,

there are exceptions.

> Evidence of other offenses is admitted if it
> shows the conduct and feeling of the accused
> toward his victim, if it establishes their
> prior relations, or if it tends to prove any
> relevant element of the offense charged.
> Such evidence is permissible in cases where
> the motive, intent or knowledge of the
> accused is involved, or where the evidence
> is connected with or leads up to the offense
> for which the accused is on trial.  Also,
> testimony of other crimes is admissible
> where the other crimes constitute a part of
> the general scheme of which the crime
> charged is a part.  Frequently it is
> impossible to give a connected statement
> showing the crime charged without incidental
> reference to such contemporaneous and
> similar crimes and where there is only such
> incidental disclosure of other offenses.

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802,

805 (1970).

Keyes contends that the trial court erred in ruling that

evidence of his conviction for the attempted rape of Ms. Carter

could be presented to the jury.  We disagree.  The prior

attempted rape conviction put the letter in context and helped

identify Keyes as the author of the letter and the intent with

which he sent it.

The intercepted letter was written using cutout words and

phrases and signed "The Nightmare Child" in an effort to conceal

the author's identity.  Furthermore, while Keyes' name and

identifying data was handwritten on the envelope containing the

threatening letter, the Commonwealth's expert was unable to

-

completely rule out other possible authors.  Thus, identity was clearly an issue as well as the conduct and feeling of the author toward the intended victim.

> Q [Keyes' attorney]:  So the indications or similarities, you're saying you've compared . . . the known writing [of Keyes] with the questioned writing and you find similarities there?
>
> A [Richard Horton]:  Yes, the indications finding means that there are many significant similarities between the habits in the questioned writing and the habits in Mr. Keyes' writing and that it's very unlikely that someone other than him wrote those entries.
>
> Q:  Why didn't you just say that it was his handwriting?
>
> A:  Well, because the address entries on the envelope are quite stylized in, probably in an attempt to distort.  I had to look extensively through Mr. Keyes' writing to find areas where he did write quite stylized like that but I never found that degree of stylization, and quite frankly, the reason I didn't identify him is because there were, there were some things that I didn't find, that I didn't find.  What I found was very good but it was short of me being positive that he was the writer.

Because of the sexual overtones found in the letter addressed to her, Keyes' prior conviction for the attempted rape of Ms. Carter was material to prove his intent to communicate a threat to her and to identify him as the individual who prepared the letter.

—

## D. REFUSAL TO GIVE STALKING INSTRUCTION

Lastly, we consider whether the trial court erred in refusing to give to the jury, Keyes' alternate instruction defining the elements of the offense of stalking. Keyes did not offer the stalking instruction as a lesser-included offense nor did the court address it as such.

> JUDGE WOOD: Let the record reflect that the defendant is present in the Courtroom with his attorney. Gentlemen, the Court proposes to give Instructions 1, 2, and 4, and I will refuse Instruction B, which is offered by the defendant [Keyes].
>
> MR. BOBBITT [Keyes' attorney]: Your Honor, we, we would object to the Court's refusal to give Instruction B, which is the instruction on stalking, on the grounds that the evidence presented in the case is appropriate to that offense in that it shows that, that there was a previous sexual incident between Mr. Keyes and, and Ms. Carter, because there was evidence of an attempted, that he had been convicted of attempted rape and that the, the letter in this case has to do more with a, some sort of threat of criminal sexual assault rather than any physical injury and, and so we would submit that the stalking instruction would be more appropriate.
>
> JUDGE WOOD: All right. I'll note your objection to the ruling of the Court.

For the trial court to have considered stalking as an alternate offense and to have given the instruction to the jury, Keyes would have had to request an amendment of the indictment to charge that offense. He did not.

-

> "[A]n accused cannot be convicted of a crime
> that has not been charged, unless the crime
> is a lesser-included offense of the crime
> charged.  Thus, neither the Commonwealth nor
> an accused is entitled to a jury instruction
> on an offense not charged, unless the
> offense is a lesser-included offense of the
> charged offense."

Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000).  Since the stalking instruction was not offered as a lesser-included offense instruction, and Keyes did not seek to amend the indictment, the trial court did not err in refusing to give the alternate stalking instruction to the jury.

The judgment of the trial court is affirmed.

Affirmed.

-