COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


LUTHER LEE WISE
                                                           OPINION BY
v.        Record No. 2385-05-4              JUDGE JAMES W. BENTON, JR.
                                                      FEBRUARY 27, 2007
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                             Burke F. McCahill, Judge

            Bonnie H. Hoffman, Deputy Public Defender, for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        The trial judge convicted Luther Lee Wise of obstructing justice in violation of Code

§ 18.2-460(C).  Wise contends Code § 18.2-460(C) is unconstitutional, in violation of the First and

Fourteenth Amendments, both facially and as applied to him.  We hold the statute is not

constitutionally infirm, and we affirm the conviction.

                                              I.

        A grand jury indicted Wise for felony obstruction of justice, in violation of Code

§ 18.2-460(C).  In pertinent part, this subsection of the statute provides as follows:

                   If any person by threats of bodily harm . . . knowingly attempts
            to intimidate or impede a judge, magistrate, justice, juror, witness,
            or any law-enforcement officer, lawfully engaged in the discharge
            of his duty . . . relating to the violation of any violent felony
            offense listed in subsection C of [Code] § 17.1-805, he shall be
            guilty of a Class 5 felony.

The indictment charged that Wise feloniously, by threats of bodily harm, knowingly attempted to

intimidate or impede a law-enforcement officer engaged in the discharge of his duties.

In a motion to dismiss the indictment, Wise contended Code § 18.2-460(C) was overbroad and violated the First Amendment. The motion and supporting memorandum asserted, in part, that the statute criminalized mere words, infringed upon a substantial amount of protected speech, and did not require the Commonwealth to "prove that the words alleged to have been spoken by [Wise] intimidated or frightened the person to whom they were directed." The trial judge heard argument on the motion prior to trial and overruled the motion.

The evidence at trial proved a police officer arrested Wise for breaking and entering a residence, a violent felony offense listed in Code § 17.1-805(C) and incorporated in Code § 18.2-460(C). After a magistrate denied bail to Wise, Wise asked the police officer if he could make a telephone call. When the officer told Wise he could do so at the jail, Wise responded "Good. Because I'm going to use it to have you dusted." The officer testified he questioned Wise about his statement and his intent. When the officer told Wise he would obtain a warrant for the threat, Wise then said he only intended to call the magistrate's office to have the officer terminated from his employment. Upon arriving at the jail, Wise said to the officer: "The first thing . . . I'm going to do when I get out is find you. I know where you live, or, I see you all the time in town. You're mine." Later, while in his cell, Wise said in the presence of another officer, "I'm going to stab that fucking cop."

Wise testified he was intoxicated during the incident and did not recall his statements. When asked if he responded "yes" to the officer's inquiry about whether "dusted" meant "killed," Wise said he did not recall his response. The officer testified on rebuttal, however, that Wise said "yes" when the officer asked him if dusted "meant he was going to have [the officer] killed."

At the conclusion of the evidence, the trial judge found that Wise's testimony was not credible, that Wise was angry when he made the threats, and that Wise made threats of bodily

harm to intimidate the officer in the performance of his duties.  The trial judge, therefore, convicted Wise of the felony of obstructing justice.

## II.

Wise contends Code § 18.2-460(C) is facially unconstitutional in violation of the First Amendment because it is not narrowly tailored to avoid criminalizing constitutionally protected speech.  He advances three specific arguments in support of this contention:  (1) the statute "is not limited . . . to only words having a tendency to incite the listener to immediate violence" and, thus, it contravenes the "fighting words" doctrine articulated in Chaplinsky v. New Hampshire, 315 U.S. 568 (1942); (2) the statute's "use of the term 'threat' . . . does not remove it from [infringing upon] the class of protected speech"; and (3) the statute offends the First Amendment because it "is limited to statements made to law enforcement."  The Commonwealth argues Code § 18.2-460(C) is facially valid because it does not reach a substantial amount of constitutionally protected speech.  We hold that the statute is not overbroad in contravention of the First Amendment.

## (A)

"As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied . . . in hypothetical situations . . . [; however, the Supreme Court has recognized a] limited exception . . . for statutes that broadly prohibit speech protected by the First Amendment."  Ulster County Court v. Allen, 442 U.S. 140, 155 (1979) (citing Broadrick v. Oklahoma, 413 U.S. 601, 610-16 (1973)).  "The Court has repeatedly held that such a statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it."  City Council v. Taxpayers for Vincent, 466 U.S. 789, 798-99 (1984).  To invoke this exception and to establish that Code § 18.2-460(C) is overly broad in violation of the First

- 3 -

Amendment, Wise initially must show the statute "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" Virginia v. Hicks, 539 U.S. 113, 118-19 (2003) (citation omitted). If the statute does not reach a substantial amount of constitutionally protected speech, Wise's overbreadth challenge fails. Id.; Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982).

Wise first contends the statute is unconstitutional "because it is not limited in its application to only words having a tendency to incite the listener to immediate violence." In other words, he argues he cannot be punished under a statute that "criminalizes speech outside the bounds of the classic 'fighting words.'"

The Supreme Court long ago noted "that the right of free speech is not absolute at all times and under all circumstances." Chaplinsky, 315 U.S. at 571. Upholding a New Hampshire statute, the Court held states have the authority to punish "certain well-defined and narrowly limited classes of speech . . . includ[ing] the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Id. at 571-72 (footnote omitted). The Court did not hold, however, that those enumerated instances were exhaustive of the state's authority under the First Amendment. Indeed, as the following quotation demonstrates, the Supreme Court specifically referred to Chaplinsky when later recognizing another limited class of speech exempt from the protection of the First Amendment.

> The protections afforded by the First Amendment . . . are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution. See, e.g., Chaplinsky v. New Hampshire, 315 U.S. 568, 571-572 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem"). The First Amendment permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is

- 4 -

> clearly outweighed by the social interest in order and morality.'"
> R.A.V. v. City of St. Paul, [505 U.S. 377, 382-83 (1992)] (quoting
> Chaplinsky v. New Hampshire, supra, at 572).
>
> Thus, for example, a State may punish those words "which by
> their very utterance inflict injury or tend to incite an immediate
> breach of the peace." Chaplinsky v. New Hampshire, supra, at
> 572; see also R.A.V. v. City of St. Paul, supra, at 383 (listing
> limited areas where the First Amendment permits restrictions on
> the content of speech). . . . And the First Amendment also permits
> a State to ban a "true threat." Watts v. United States, 394 U.S.
> 705, 708 (1969) (per curiam) (internal quotation marks omitted);
> accord, R.A.V. v. City of St. Paul, supra, at 388 ("[T]hreats of
> violence are outside the First Amendment"); Madsen v. Women's
> Health Center, Inc., 512 U.S. 753, 774 (1994); Schenck v. Pro-
> Choice Network of Western N.Y., 519 U.S. 357, 373 (1997).

Virginia v. Black, 538 U.S. 343, 358-59 (2003).

"[T]hese areas of speech can, consistently with the First Amendment, be regulated

*because of their constitutionally proscribable content* (obscenity, defamation, etc.)." City of St.

Paul, 505 U.S. at 383. In other words, speech that contains a threat of physical harm "is

independently proscribable" under the First Amendment. Madsen, 512 U.S. at 774. See also

NAACP v. Claiborne Hardware Co., 458 U.S. 886, 916 (1982) (noting that "[t]he First

Amendment does not protect violence"); Milk Wagon Drivers Union of Chicago, Local 753 v.

Meadowmoor Dairies, Inc., 312 U.S. 287, 292-93 (1941) (explaining the Constitution does not

shelter speech that is made in the context of violence and that is indistinguishable from threats of

harm). The speech proscribed by Code § 18.2-460(C) falls within this limited class because it

encompasses only "threats of bodily harm."

We hold, therefore, Code § 18.2-460(C) is not unconstitutional merely because, as Wise

argues, "it criminalizes the utterance of words without a requirement that those words would

incite an immediate breach of peace of the person to whom the words are directed." The

"fighting words" doctrine of Chaplinsky is not the exclusive justification for the state's power to

regulate expression. Black, 538 U.S. at 359. Subsection C of Code § 18.2-460 extends to speech

only when it contains threats of bodily harm.  See City of St. Paul, 505 U.S. at 388 (noting that "threats of violence are outside the First Amendment").  For these reasons, we reject Wise's assertion that merely "[b]ecause the statute criminalizes speech outside the bounds of the classic 'fighting words' it is overly broad and violates the First Amendment."[1]

Wise also contends "the use of the term 'threat' in [Code §] 18.2-460(C) does not remove it from [infringing upon] the class of protected speech."  He argues the Supreme Court's reference in Chaplinsky to "threatening . . . revilings" as unprotected speech, 315 U.S. at 573, was "dicta," and he argues, in any event, the "Court was using the term 'threats' to refer to words, which like 'fighting words' are of a type which, by their very nature, will provoke violence."

Wise's argument is grounded in the premise that threats, just as fighting words, are exempt from First Amendment protection only when they "have the 'characteristic of plainly tending to excite the addressee to a breach of the peace.'"  Approving New Hampshire's construction of its statute, the Chaplinsky decision recognized the statute did "no more than prohibit . . . 'classical fighting words,' words in current use less 'classical' but equally likely to cause violence, . . . including . . . threats."  315 U.S. at 573.  As we have earlier explained, the Supreme Court in Black was not limiting its holding to the Chaplinsky definitions but, rather, referred to "fighting words" and "true threats" as distinct, separate exemptions from First

---

[1] Wise relies upon City of Houston v. Hill, 482 U.S. 451, 462 (1987) (holding unconstitutional a statute that "prohibits speech that 'in any manner . . . interrupt[s]' an officer"); Lewis v. City of New Orleans, 415 U.S. 130, 131-32 (1974) (holding unconstitutionally broad a statute prohibiting the use of "opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty"); Gooding, Warden v. Wilson, 405 U.S. 518, 519-20 (1972) (holding unconstitutional a statute barring the use of "opprobrious words or abusive language, tending to cause a breach of the peace"); Terminello v. Chicago, 337 U.S. 1, 3 (1949) (striking as unconstitutional an ordinance prohibiting "improper noise, riot, disturbance, breach of the peace, or diversion tending to a breach of the peace").  None of these decisions concerned a statute proscribing threats or, as germane to this case, "threats of bodily harm."

Amendment protections.  <u>Black</u>, 538 U.S. at 359.  The Court explained this latter category of

speech as follows:

> "True threats" encompass those statements where the speaker
> means to communicate a serious expression of an intent to commit
> an act of unlawful violence to a particular individual or group of
> individuals.  See <u>Watts v. United States</u>, <u>supra</u>, at 708 ("political
> hyberbole" is not a true threat); <u>R.A.V. v. City of St. Paul</u>, 505
> U.S., at 388.  The speaker need not actually intend to carry out the
> threat.  Rather, a prohibition on true threats "protect[s] individuals
> from the fear of violence" and "from the disruption that fear
> engenders," in addition to protecting people "from the possibility
> that the threatened violence will occur."  <u>Ibid.</u>  Intimidation in the
> constitutionally proscribable sense of the word is a type of true
> threat, where a speaker directs a threat to a person or group of
> persons with the intent of placing the victim in fear of bodily harm
> or death.

<u>Id.</u> at 359-60.

Wise argues that "threats" as proscribed in Code § 18.2-460(C) do not fall within this

narrow category because the statute "does not limit its application to face-to-face statements"

and does not encompass only words with the "innate ability to incite immediate violence."  He

further argues that our holding in <u>Polk v. Commonwealth</u>, 4 Va. App. 590, 358 S.E.2d 770

(1987), "'strips' the word 'threat' of its First Amendment exemption" because it rendered the

listener's response immaterial in a prosecution under the statute.

We are mindful of the Supreme Court's admonition that regulation of speech must be

narrowly drawn.

> The constitutional guarantees of freedom of speech forbid the
> States to punish the use of words or language not within "narrowly
> limited classes of speech."  Even as to such a class, however,
> because "the line between speech unconditionally guaranteed and
> speech which may legitimately be regulated, suppressed, or
> punished is finely drawn," "[i]n every case the power to regulate
> must be so exercised as not, in attaining a permissible end, unduly
> to infringe the protected freedom."  In other words, the statute
> must be carefully drawn or be authoritatively construed to punish
> only unprotected speech and not be susceptible of application to
> protected expression.  "Because First Amendment freedoms need

> breathing space to survive, government may regulate in the area only with narrow specificity."

Gooding, Warden v. Wilson, 405 U.S. 518, 521-22 (1972) (citations omitted).  Thus, the Court has held that "[w]hat is a threat must be distinguished from what is constitutionally protected." Watts, 394 U.S. at 706 (finding defendant's statement, "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," was "political hyperbole," made during a public rally, and not a "true threat").

Proscribable threats are threats that "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Black, 538 U.S. at 359.  Under this standard, the government is not required to prove an "apparent present ability to carry [the threat] out . . . [because] a threat causes disruptions, inconveniences, and costs even if its maker is unable to carry through with it." United States v. Fuller, 387 F.3d 643, 648 (7th Cir. 2004).  Indeed, the Supreme Court also has held that "[t]he speaker need not actually intend to carry out the threat" to be proscribable.  See Black, 538 U.S. at 359-60.  "The reasons why threats of violence are outside the First Amendment . . . [include] protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." City of St. Paul, 505 U.S. at 388.

Code § 18.2-460(C) satisfies these concerns because the only speech it proscribes is "threats of bodily harm."  The plain language of Code § 18.2-460(C) indicates the legislature intended to proscribe knowing attempts to intimidate or impede individuals engaged in the operation of the legal system.  In Virginia, "[a] threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property." Summerlin v. Commonwealth, 37 Va. App. 288, 297, 557 S.E.2d 731, 736 (2002).  Virginia courts must consider a communication in its particular context when determining whether a speaker's words

- 8 -

constitute a true threat.  See DiMaio v. Commonwealth, 46 Va. App. 755, 767, 621 S.E.2d 696, 702 (2005), aff'd, 272 Va. 504, 636 S.E.2d 456 (2006).  In view of this requirement, the proscription against threats of bodily harm complies with Watts and its progeny.  See Watts, 394 U.S. at 708 (considering context in which threat was made, conditional nature of statement, and reaction of the listeners to determine whether defendant's statements were a "true threat"); see also United States v. Lockhart, 382 F.3d 447, 451-52 (4th Cir. 2004) (applying Watts factors to determine whether appellant's statements constituted "true threat"); United States v. Cooper, 865 F.2d 83, 85 (4th Cir. 1989) (same).  Our case decisions define the term "threat" narrowly to avoid encompassing protected speech within its scope and, thus, Code § 18.2-460(C), proscribes only true threats.

The appellant in Polk challenged the sufficiency of the evidence against him, arguing words alone did not constitute a violation of former Code § 18.2-460(A).  We rejected that argument and held as follows:

> The plain language of Code § 18.2-460(A) provides that *threats* constitute a violation of the statute when they are knowingly made in an attempt to intimidate or impede law enforcement officers who are performing their duties.  Thus, it is the threats made by the offender, coupled with his intent, that constitute the offense.  The resulting effect of the offender's threats, such as fear, apprehension, or delay, is not an element of the crime defined in Code § 18.2-460.  By the express terms of the statute, it is immaterial whether the officer is placed in fear or apprehension. The offense is complete when the attempt to intimidate is made.

Polk, 4 Va. App. at 593-94, 358 S.E.2d at 772.  Thus, we held that Polk's statement that he would kill the officer "was a threat as contemplated by the statute."  Id. at 594, 358 S.E.2d at 772.  This holding does not diverge from the Watts requirement that the state prove a "true threat."

Wise further asserts that Code § 18.2-460(C) offends the First Amendment because of the class of individuals it seeks to protect.  He argues that criminalizing threats made against a

- 9 -

"subpopulation of the at-large community" is troubling for two reasons: first, persons such as law enforcement officers "may be less likely than other citizens to react with violence to certain threats because of their training and experience"; second, the provisions of Code § 18.2-460(C) do not propose a unique and compelling reason to protect the individuals identified in the statute. He argues the select class of individuals identified in the statute "serves to reinforce the notion that this section is not designed to prevent violence, the threat of violence, or the fear of violence, but merely to criminalize the utterance of words directed at a selected audience." These arguments have no merit.

> [The Supreme Court of Virginia has] previously described the public policy underlying the obstruction of justice statute as reflecting "the General Assembly's intent to prohibit interference with the administration of justice" and [to] protect[] "the public's safety and welfare." City of Virginia Beach v. Harris, 259 Va. 220, 233, 523 S.E.2d 239, 246 (2000). The goal of this policy is not to protect individuals from intimidation, but to protect the public from a flawed legal system due to impaired prosecution of criminals.

Rowan v. Tractor Supply Co., 263 Va. 209, 215, 599 S.E.2d 709, 712 (2002). Under Code § 18.2-460(C), "[d]ifferential treatment of threats against [law enforcement officers] . . . selects nothing but special risks, not special messages." Black, 538 U.S. at 384 (Souter, J., concurring in part and dissenting in part).[2]

Wise relies on Marttila v. City of Lynchburg, 33 Va. App. 592, 535 S.E.2d 693 (2000), in support of his assertion. In Marttila, the appellant challenged his conviction under Code § 18.2-416, Virginia's breach of peace statute, which criminalizes "fighting words." 33 Va. App. at 598, 535 S.E.2d at 698. We recognized that when confronted with an individual's use of

---

[2] To the extent that Wise may be suggesting the statute improperly permits content discrimination, we note that the Supreme Court of the United States has indicated "it would be constitutional to ban only a particular type of threat." Black, 538 U.S. at 362. Specifically, "the First Amendment permits content discrimination 'based on the very reasons why the particular class of speech at issue . . . is proscribable.'" Id. (citation omitted).

"fighting words," police officers were required to exercise "greater restraint in their responses than the average citizen." Id. at 600, 535 S.E.2d at 697. Code § 18.2-460(C) aims, however, to protect the integrity of the legal process, not any individual personally. Whether a speaker's words would provoke a law enforcement officer to a violent response is immaterial to the application and validity of Code § 18.2-460(C). Marttila, therefore, is distinguishable from the case at hand.

For these reasons, we hold that Code § 18.2-460(C) does not reach a substantial amount of constitutionally protected speech and is not facially violative of the First Amendment.

III.

Wise further contends Code § 18.2-460(C) is unconstitutional as applied to him because his statements, taken in context, do not rise to the level of "fighting words." The Commonwealth responds that "fighting words" are not necessary for a conviction under the statute and Code § 18.2-460(C) "is clearly and properly applicable" to Wise's behavior. We agree with the Commonwealth.

According to the officer's testimony, Wise threatened to have him "dusted." Wise said "the first thing I'm going to do when I get out is find you. I know where you live, or, I see you all the time in town. You're mine." Later, Wise was heard to say, "I'm going to stab that fucking cop." The trial judge found that Wise's testimony was "not credible" and that this evidence proved Wise meant he "was going to have [the officer] killed."

The First Amendment is not implicated in this case because Wise made a threat of bodily harm within the meaning of the statute. This was not a situation involving hyperbole analogous to Watts and the context does not otherwise indicate Wise was making a political statement. The trial judge found the evidence, in context, proved Wise intended to intimidate the officer by threatening physical harm. See Selph v. Commonwealth, 48 Va. App. 426, 433-35, 632 S.E.2d

24, 27-28 (2006) (holding intent to intimidate or threaten may be proved by circumstantial evidence, such as one's conduct or statements).  See also Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999) ("credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination").  Wise's threats of bodily harm were precisely prohibited by Code § 18.2-460(C); they were "true threats"; and they were not protected speech.  Therefore, his "as applied" challenge also fails.

IV.

In summary, we hold Code § 18.2-460(C) is not constitutionally overbroad and is not unconstitutional as applied to the facts of this case.  For these reasons, we affirm the conviction.

Affirmed.