COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Petty and Alston
Argued by teleconference


JOHN ANDREW-COLLINS HOLCOMB
                                                            OPINION BY
v.        Record No. 0546-10-1                    JUDGE LARRY G. ELDER
                                                            JUNE 7, 2011
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            Frederick B. Lowe, Judge

            Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellant.

            Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        John Andrew-Collins Holcomb (appellant) challenges the sufficiency of the evidence

supporting his conviction for knowingly communicating a written threat in violation of Code

§ 18.2-60(A)(1).  Specifically, appellant argues 1) his MySpace posts are not the type of

communication contemplated or prohibited by the statute, and 2) the posted lyrics do not

constitute a threat.  Because the evidence supports a finding that appellant posted a threat on his

MySpace profile that placed the recipient in reasonable apprehension of death or bodily injury,

we affirm appellant's conviction.

I.

BACKGROUND

        Appellant and the victim, Miranda Rollman, were previously involved in a romantic

relationship that produced a daughter.  After the relationship dissolved, a custody battle ensued

over their child.  During this time and prior to appellant's arrest for the current offense, he began posting incendiary messages on his MySpace profile,[1] resulting in his arrest.

At trial, the court admitted into evidence several printouts from appellant's MySpace profile.  One of the blog entries—titled "Unfinished Bizness God, I Give You the 'woodroll' family.  Tell them to 'F the F OFF' and 'GET OFF ME,'"—read:

> Poof!  Make ya daughter disappear like 2pac!
> He knew now what he do like 2 cops
> With no vest, off'd with 2 shots
> Thru the chest from 2 blocks!

Another post dated August 22, 2009, read:

> Custody battles, restraining orders
> Bitch made me go mad I just had to stab her
> Blind now I see her true colors
> On the front cover of The World's Most Murdered Mothers
> By Americas Most Wanted Fathers

The post continued, "Ain't nobody playin' bitch[,] slit your neck into a fountain drink," "This is your pre-accident announcing[.]  Fuck your fliers[,] I already put the word out for the crowd 2 see[,]" "No one hearing your screams from the knife cut sounds," and "See you with my daughter I'm a snatch her."  A final post dated August 24, 2009, read:

> Still psychotic runnin' wit the hatchet
> Never lettin' go ya throat becomes my obsession
> Slit throats, blood flows, forever dead and never woke
> Bitch don't get choked, sit down ho, don't provoke

This entry concluded with, "Still labeled psychotic just in case you're not worried; murder makes me happy so don't believe I'm nervous."

---

[1] According to Rollman, MySpace is a social networking website that provides a platform for individuals to design and represent to others a unique webpage called a profile.  On the profile, users can post, among other things, photographs, writings, URL links, blog entries, and comments.  Individual profiles may be accessed by other MySpace account users; however, access may be limited depending on privacy settings placed on each account by the holder.  Both appellant and Rollman used MySpace accounts at the time of appellant's posts.

Upon being alerted by family members, Rollman testified that she used her mother's computer to access her MySpace account and view appellant's posts. After reading them, she "was scared that [she] was going to be killed, maimed; [her] daughter was going to be kidnapped by [appellant]" due to "the extent of the details of exactly what [appellant] wanted to do to [her]." Rollman explained she believed these threats were directed toward her and her family because the blog entry addressed "the 'woodroll' family," and "Woodroll is my maiden name." Rollman further testified that one of the posts referenced an incident involving two police officers being called to her house, and the other post referred to a time when her mother passed out flyers with appellant's picture at Rollman's place of employment. Rollman acknowledged she and appellant were going through a custody battle and restraining orders had been issued. Taking these posts seriously, Rollman moved into her parents' home because "they have a security system and cameras."

On cross-examination, Rollman admitted that appellant's MySpace profile contained "[p]lenty of different things" in addition to the posts. Rollman confirmed that appellant described himself as a "juggalo," which is part of "a big family" that "play[s] the same kind of music, listen[s] to the same kind of music." Appellant "considers himself to be something of a lyricist of [rap] music," though "he didn't write demented things" during the course of his relationship with Rollman. Rollman speculated that appellant considered the posts "one long song," and it was "all on the front page for the world to see."

Appellant testified in his own defense. He characterized the compilations of words he composed and posted as "art," "meant to be songs" and "just clever limericks." Appellant testified he had "been writing songs since [he] was eleven years old, and they're on [his] MySpace profile because it's there to express who you are." He acknowledged he knew Rollman had a MySpace profile but maintained he did not invite her or her family to view his

profile. However, he agreed that he put the material on his profile "for the express purpose of it being seen by other people." Appellant knew he had posted material in April that caused Rollman to be in fear. He denied ever intending for Rollman to read his posts and feel threatened, but acknowledged the posts "if [they] were reality . . . that would be very horrifying; and to think that I think it just to write it is—you know, could just be as horrifying." Appellant testified that he attempted to block Rollman's access to his profile sometime in September 2009 and later deleted his profile altogether.

The trial court found that appellant's ongoing custody dispute involving his daughter created a "connection or [a] nexus" between his posts and Rollman's "individual situation" such that the posts constituted "very veiled threats." The trial court accordingly found appellant guilty of communicating a threat in violation of Code § 18.2-60, and this appeal followed.

## II.

## ANALYSIS

Appellant challenges the sufficiency of the evidence supporting his conviction for communicating a written threat in violation of Code § 18.2-60(A)(1).[2] When the sufficiency of the evidence is challenged on appeal, the court views the evidence in the light most favorable to the prevailing party and draws all reasonable inferences in its favor. See Dunbar v. Commonwealth, 29 Va. App. 387, 393, 512 S.E.2d 823, 826 (1999). "'The judgment of the trial

---

[2] Code § 18.2-60(A)(1) provides:

> Any person who knowingly communicates, in a writing, including an electronically transmitted communication producing a visual or electronic message, a threat to kill or do bodily injury to a person, regarding that person or any member of his family, and the threat places such person in reasonable apprehension of death or bodily injury to himself or his family member, is guilty of a Class 6 felony.

court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Wilkins v. Commonwealth, 18 Va. App. 293, 295, 443 S.E.2d 440, 442 (1994) (en banc) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). We "must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

## A.

## COMMUNICATION

Appellant first argues the evidence fails to establish that he knowingly communicated the posts within the meaning of the statute. Appellant suggests that because his chosen medium was "available for everyone to view" on a public website and he did not specifically send the posts to Rollman or direct her to view his posts, he cannot be convicted. We disagree.

In 1998, the General Assembly amended Code § 18.2-60 to criminalize threats contained in "electronically transmitted communication[s] producing a visual or electronic message." 1998 Va. Acts ch. 687. Code § 18.2-60(A)(1) contains no requirement that the accused must communicate the written threat directly to the intended victim. Instead, "[p]roof that [the accused] intended to make and communicate the [alleged] threat and that the [alleged] threat was made and communicated satisfies the statutory requirement." Summerlin v. Commonwealth, 37 Va. App. 288, 298, 557 S.E.2d 731, 736 (2002). The statute is concerned with neither the mode of communication nor the number of recipients of the alleged threatening communication. E.g.,

<u>Keyes v. Commonwealth</u>, 39 Va. App. 294, 298, 572 S.E.2d 512, 514 (2002) (affirming the defendant's conviction under former Code § 18.2-60(A) even though his threatening letter had been intercepted in the mail before it reached its intended victim); <u>see also</u> <u>United States v. Morales</u>, 272 F.3d 284, 288 (5th Cir. 2001) (rejecting the defendant's argument that his online statements could not constitute a true threat under 18 U.S.C. § 875(c) because "they were made to a random third party who had no connection with" the intended victim).

In interpreting 18 U.S.C. § 875(c),[3] the Second Circuit rejected a similar argument "that the broadcast of the threat to an indefinite and unknown audience is not a 'communication' of that threat." <u>United States v. Kelner</u>, 534 F.2d 1020, 1023 (2d Cir. 1976). The court reasoned that if this argument were taken to its logical conclusion, "any would-be threatener could avoid the statute by seeking the widest possible means of disseminating his threat." <u>Id.</u> Rather, the proper inquiry was whether the accused "intended to communicate a threat of injury through means reasonably adapted to that purpose." <u>Id.</u>

As applied to this case, posting a message on a MySpace profile plainly falls into the category of an "electronically transmitted communication" because it produces a "visual or electronic message" that can be viewed by anyone who has access to that person's MySpace profile. In fact, the Commonwealth was readily able to print out the posts from appellant's MySpace profile and enter them into evidence at his trial. Appellant further concedes that he knowingly posted the messages on his MySpace profile. If these messages constituted threats, then nothing more is required. <u>Cf.</u> <u>Wise v. Commonwealth</u>, 49 Va. App. 344, 355, 641 S.E.2d 134, 140 (2007) (noting that in the context of Code § 18.2-460(C), "'[t]he speaker need not

---

[3] 18 U.S.C. § 875(c) criminalizes the "transmi[ssion] in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another."

actually intend to carry out the threat' to be proscribable" (quoting <u>Virginia v. Black</u>, 538 U.S. 343, 359-60, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535, 552 (2003))).

It is of no consequence that appellant did not direct Rollman to view his MySpace profile. As explained in further detail below, it is sufficient appellant made numerous references to his history with Rollman that allowed her to identify herself as the subject of the violent fantasies once she did view the profile. Further, appellant knew Rollman had access to his MySpace profile and had in fact viewed it in the past. The fact that Rollman lacked a personal computer from which she could access MySpace does not lessen the threatening nature of appellant's posts because Rollman could, and did, just as easily access MySpace from her mother's computer. We thus conclude appellant's posts on his MySpace profile are electronic communications capable, depending on their content, of constituting threats in violation of Code § 18.2-60.

B.

THREAT

Appellant next argues his posts do not constitute threats under Code § 18.2-60(A)(1). Appellant contends the context of the posts indicates that they are lyrics, notwithstanding the graphic and violent content of the messages. In support of this argument, appellant asserts that he previously used MySpace as a medium for posting other lyrics he had composed, and he has an established history of involvement with that particular style of music.

"A threat, in the criminal context, is recognized to be a communication avowing an intent to injure another's person or property." <u>Perkins v. Commonwealth</u>, 12 Va. App. 7, 16, 402 S.E.2d 229, 234 (1991). We "must consider a communication in its particular context when determining whether a speaker's words constitute a true threat." <u>Wise</u>, 49 Va. App. at 355, 641 S.E.2d at 140. Thus, we "view the totality of the circumstances under which the statement was made." <u>DiMaio v. Commonwealth</u>, 46 Va. App. 755, 767, 621 S.E.2d 696, 702 (2005).

- 7 -

"'Threats of physical harm need not be directly expressed, but may be contained in "veiled statements" nonetheless implying injury to the recipient when viewed in all the surrounding circumstances.'" Keyes, 39 Va. App. at 302, 572 S.E.2d at 516 (quoting State v. McGinnis, 243 N.W.2d 583, 589 (Iowa 1976)).

Credible evidence supports the trial court's finding that appellant's posts on his MySpace profile were threats because the graphic and violent imagery used in the messages specifically referred to Rollman and her family. In one blog entry, appellant referred to Rollman by using her maiden name, Woodroll. Appellant further referenced specific incidents involving Rollman and identified details that were unique to the acrimonious history between appellant and Rollman stemming from the ongoing custody dispute over their daughter. See, e.g., id. (noting the prior history between the victim and the defendant, who was incarcerated for attempting to rape the victim). Appellant referred to the restraining order Rollman had obtained that prevented contact between appellant and his daughter, about which appellant demonstrated significant hostility. Rollman testified that she recognized several of the incidents contained within the posts, including an incident in which two police officers responded to a domestic disturbance involving appellant and another incident in which Rollman's mother posted flyers bearing appellant's picture at Rollman's place of employment. This specificity demonstrates appellant's hostility towards Rollman, as he coupled each of these references with desires to violently retaliate against Rollman and her family. To the casual observer, the posts may have seemed somewhat innocuous, but the specificity of the posts relating to appellant's tumultuous history with Rollman and her family makes clear that appellant's posts were directed towards Rollman and not meant to be mere expression.

The graphic and violent imagery contained within the posts further indicates the threatening nature of the messages. Appellant made frequent proclamations that he "just had to

stab [Rollman]" and "slit [her] neck into a fountain drink."  Appellant explicitly fantasized about "[n]ever lettin' go ya throat" and "[n]o one hearing your screams from the knife cut sounds," and concluded "murder makes me happy so don't believe I'm nervous."  Appellant clearly targeted Rollman as the victim in these violent fantasies, and even admitted that if taken literally, the posts "would be very horrifying."  The trial court was not required to accept appellant's testimony that the posts were "meant to be songs" or "clever limericks."  Although the evidence suggests appellant had composed and posted lyrics of a similar style in the past, Rollman testified that the subject matter of those lyrics was never as "demented" prior to the deterioration of their relationship.

Finally, we must consider Rollman's reaction to appellant's posts to determine whether they placed her in "reasonable apprehension of death or bodily injury."[4]  Code § 18.2-60(A)(1); see Summerlin, 37 Va. App. at 298, 557 S.E.2d at 736 (discussing the victim's evacuation of the building in response to the defendant's phone call insinuating that he would detonate a bomb within the organization).  In response to reading the posts, Rollman moved into her parents' home to take advantage of their security system and cameras.  Rollman further testified she "was scared that [she] was going to be killed [or] maimed" and that "her daughter was going to be

---

[4] The Federal Courts of Appeal have uniformly held that "evidence of the recipient's reaction is relevant and admissible" to the inquiry of whether it was reasonable for the victim to believe an individual had a serious intention of inflicting physical harm.  United States v. Alaboud, 347 F.3d 1293, 1298 (11th Cir. 2003); see also United States v. Fulmer, 108 F.3d 1486, 1499-1500 (1st Cir. 1997) ("We find that evidence of the recipient's reactions is relevant to that inquiry."); United States v. Dinwiddie, 76 F.3d 913, 925 (8th Cir. 1996); United States v. Roberts, 915 F.2d 889, 890-91 (4th Cir. 1990); United States v. Schneider, 910 F.2d 1569, 1571 (7th Cir. 1990) ("The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it is a threat."); United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990) (considering the "reaction of the listeners").  Thus, in determining whether a statement is threatening and places the recipient "in reasonable apprehension of death or bodily injury" under Code § 18.2-60(A)(1), we hold that "proof of the effect of the alleged threat upon the addressee is highly relevant[,]" United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994).

kidnapped." "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

III.

CONCLUSION

The record provides sufficient evidence to prove beyond a reasonable doubt that appellant wrote a message on his MySpace profile threatening to kill or do bodily injury to Rollman and that the threat placed Rollman in reasonable apprehension of death or bodily injury. Accordingly, we affirm appellant's conviction.

Affirmed.