COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Decker, Judges Ortiz and Causey
Argued at Fairfax, Virginia


JEFFERY DALE HOWARD

v.      Record No. 0495-21-4

COMMONWEALTH OF VIRGINIA

                                    OPINION BY
                          JUDGE DANIEL E. ORTIZ
                               MAY 10, 2022


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

J. Austin Timberlake, Senior Assistant Public Defender, for
appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General; Leah A. Darron, Senior Assistant Attorney
General, on brief), for appellee.


Jeffery Dale Howard ("Howard") appeals his conviction in the Stafford County Circuit

Court of threatening to burn or bomb a means of transportation under Code § 18.2-83(A).  On

appeal, Howard assigns error on four grounds:  (I) the circuit court erred in joining the assault and

battery charge with the threatening to burn or bomb charge; (II) the circuit court erred in admitting

evidence of the assault and battery following Howard's no contest plea; (III) the circuit court erred

in finding Howard guilty of threatening to burn or bomb because no reasonable juror could have

found Wendy Howard ("Wendy") reasonably feared Howard's threat; and (IV) the circuit court

erred in applying Code § 18.2-83 to Howard's threat to blow up his own property.  As Howard

waived his objection to the joinder of charges, and the circuit court did not abuse its discretion or err

as a matter of law as to the remaining assignments of error, we affirm.

BACKGROUND

The Howard family planned to spend January 6, 2019, together in celebration of the Howards' wedding anniversary. Instead, the day was filled with conflict and argument, culminating in Howard's arrest. That morning, Howard awoke in a foul mood and began yelling at the Howard children, A.H. and R.H. Howard yelled at Wendy, "get the 'F' out of [the] house, you and the kids just leave then." Wendy, A.H., and R.H. went to the mall and returned home later that day. Once home, A.H. and R.H. began watching television, while Wendy began washing dishes in the kitchen nearby.

At 5:40 p.m., Wendy called Howard and put him on speakerphone so she could continue doing the dishes. She asked him where he was, and Howard replied, "mind your own F'ing business." Wendy responded, "well, just don't come home if you're going to act like that." Howard answered, "I'll come home if I want to and I'll blow your car up with you in it or not if you try to leave." The car Wendy used was leased solely in Howard's name. At that point, Wendy hung up because her children were within earshot, and she did not want the conversation to escalate. Wendy claimed she felt scared because Howard, who was on active duty with the United States Marine Corp, "has blown up things . . . on base" and "knows how to work on vehicles and he builds guns for a living." Moreover, Howard "always kept his word when he said things in the past, so [she] didn't want to take the chance" and "[e]very time he says something, he always sticks to it."

A.H., who was ten years old at the time of trial, overheard this initial phone call and characterized Howard's tone as "[y]elling, mean, and angry." A.H. recalled that Howard said, "I will blow your car with you in it or without you in it." A.H. testified that she felt scared for her mother and did not know if Howard would follow through on his threat. Following the threat, Wendy went up to her bedroom.

At approximately 7:00 or 8:00 p.m., Wendy put the children to bed and barricaded the front door. She did not call the police because she "didn't want to know what the repercussions would be," and she was "too afraid to call." Wendy thought the repercussion would be Howard blowing up the car.

Later that night, Howard returned home, crashing his vehicle into trash cans and holding down his car horn. He attempted to enter the house but became enraged when he encountered the barricaded door and began pounding and beating on the door. Howard called Wendy, who testified that she felt "[t]errified." Eventually, Howard entered the home and went up to the third floor screaming at Wendy. Howard yelled, "Why the 'F' did you lock me out? What is your problem? I can't believe you're acting like this. You're nothing but a peel ass white trash . . . ." Howard then spat on Wendy.[1] At that point, Wendy went to the laundry room where Howard's guns and ammunition were located and sat with her back to the door.

Howard and Wendy's yelling woke up A.H. She overheard Howard "being very mean with [her] mom." A.H. texted Wendy, asking if everything was ok and if she should call the police. Wendy responded, "[d]o what you think is best" because she "was terrified." A.H. said to Howard, "I'll give you a warning to leave and if you don't leave, I'll call the cops . . . ." A.H. then called 911 from her parents' bathroom.

Following the 911 call, Stafford County Sheriff's Deputy Evan R. Houde arrived at the Howards' home in Stafford County. Deputy Houde observed Howard's vehicle in the driveway.

---

[1] Howard's spitting formed the basis for the assault and battery charge but was not presented to the jury during the trial on the threatening to burn or bomb charge. Howard was indicted on both charges but pleaded no contest to the assault and battery charge. Following Howard's plea, the Commonwealth proffered what would have been the evidence of the assault and battery offense, citing the spitting. In ruling on Howard's motion *in limine*, the circuit court excluded testimony and evidence of the spitting in the trial on the charge of threatening to burn or bomb. However, the underlying act of spitting is a part of the record and its exclusion is relevant to the analysis of Howard's second assignment of error.

Upon reaching the home, Deputy Houde noticed that Howard had red glassy eyes and smelled of alcohol. Deputy Houde entered the house and saw multiple ammunition boxes and crates piled behind the front door. He spoke to Wendy, who was "shaking uncontrollably and her bottom lip was trembling." After interviewing the parties, Deputy Houde arrested Howard.

A few weeks after Howard's arrest, the Howards exchanged text messages about the incident. Wendy testified that the messages meant she "wanted the court just to hurry up and get everything done with" but did not reflect that she wanted to "drop[] the charges." The messages themselves were not offered into evidence.

Howard was indicted for threatening to burn or bomb and assault and battery in July 2019, and he initially pled not guilty to both charges. Howard filed a motion to sever the charges against him, while the Commonwealth filed a competing motion for joinder. On January 16, 2020, the circuit court granted the Commonwealth's motion for joinder over Howard's objection.

On January 26, 2021, Howard changed his plea regarding the domestic assault and battery charge from not guilty to no contest. After changing Howard's plea, defense counsel moved to exclude evidence following the initial phone call between the Howards, including the 911 phone call made by A.H., on the basis that "[w]hat happened three to four hours later" does not pertain to the threat. Howard argued that evidence surrounding the 911 call was "not a permissible use of other acts of prior—of other crimes." The circuit court excluded the 911 call and discussion of the actual assault—the spitting. The court further limited the witnesses' testimony to "what happened up to this point" and stated that the witnesses could "discuss they called 911 if there was an altercation." Howard made a continuing objection to any testimony after the actual threat. However, on cross-examination, Howard elicited testimony from Wendy about the text messages sent three weeks after the event.

- 4 -

At trial, the court heard testimony from A.H., Wendy, and Deputy Houde.  At the close of the Commonwealth's evidence, Howard made a motion to strike, arguing that he could not be found guilty of threatening to burn or bomb his own property.  The circuit court denied the motion to strike because Howard leased the vehicle and did not own it.

Howard offered no evidence in his case-in-chief.  The jury found him guilty of threatening to burn or bomb.  The circuit court imposed the jury's recommended sentence of eighteen months and imposed additional terms for the charge of domestic assault and battery.  Howard timely appealed.

ANALYSIS

I.  Joinder of Offenses

Howard first assigns error to the circuit court's decision to join the charges against him.  However, because he pleaded no contest to the charge of misdemeanor domestic assault and battery, Howard waived his objection to the circuit court's decision on that charge.  Furthermore, because joinder definitionally requires more than one offense, and he obtained a separate trial on the charge of threatening to burn or bomb, Howard's appeal on that charge is moot.

A.  Waiver - Domestic Assault and Battery

Howard objected to the circuit court's joinder of the charges of threatening to burn or bomb and domestic assault and battery.  However, following the circuit court's decision to join the charges, Howard pleaded no contest to the domestic assault and battery charge.  "A guilty plea waives all objections to non-jurisdictional defects that occurred before the plea."  *Williams v. Commonwealth*, 33 Va. App. 725, 728 (2000).  Likewise, when an accused enters a plea of no contest, he waives all objections to non-jurisdictional defects that occurred before the plea.  *Clauson v. Commonwealth*, 29 Va. App. 282, 294 (1999).  Therefore, in addressing whether Howard waived his objection to the joinder, this Court must determine whether, assuming

- 5 -

*arguendo* that the court's decision to join the charges was a defect, that defect was non-jurisdictional.

A circuit court's decision to join two charges is non-jurisdictional in nature. "Jurisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (alteration in original) (quoting *Shelton v. Sydnor*, 126 Va. 625, 629 (1920)). In order to "adjudicate a particular case upon the merits," a court must have active jurisdiction. *Riddick v. Commonwealth*, 72 Va. App. 132, 142 (2020) (quoting *Pure Presbyterian Church of Washington*, 296 Va. at 49). Active jurisdiction includes

> subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*; and "the other conditions of fact must exist which are demanded . . . as the prerequisites of the authority of the court to proceed to judgment or decree."

*Pure Presbyterian Church of Washington*, 296 Va. at 49 (quoting *Morrison v. Bestler*, 239 Va. 166, 169 (1990)).

The decision to join criminal charges does not implicate any of the first three components of active jurisdiction set forth in *Pure Presbyterian Church of Washington*. The decision does not affect the court's subject matter jurisdiction to hear either charge. The decision does not involve the court's territorial jurisdiction, as joinder does not affect where a crime allegedly occurred. The issue does not involve notice jurisdiction, as joinder does not affect whether a defendant received notice of the charge against him.

Moreover, the applicable standard of review and precedent indicate that the decision to join charges is not a "prerequisite[] of the authority of the court to proceed to judgment or decree." *Id.* "A circuit court's determination whether a defendant may be tried for multiple

- 6 -

offenses in a single trial is a matter submitted to that court's sound discretion." *Scott v. Commonwealth*, 274 Va. 636, 644 (2007). Necessarily, the decision to join charges cannot be jurisdictional if the decision is in the trial judge's discretion. Moreover, in *Scott* the Supreme Court of Virginia reversed the appellant's convictions, holding that the charges were improperly joined and remanding the case for new trials. *Id.* at 648. If a jurisdictional defect in the initial trial were the basis for such reversal, the jurisdictional defect would exist in the remanded trial as well. Thus, the precedent and standard of review support the conclusion that a court's decision to join or sever charges is non-jurisdictional. By pleading no contest, Howard thus waived his objection to the joinder ruling with respect to the charge of domestic assault and battery.

### B. Mootness - Threatening to Burn or Bomb

Howard's no contest plea to the assault and battery left the circuit court with a single charge for trial. Because Rules 3A:10 and 3A:6 presume a trial for more than one offense, Howard's plea necessarily mooted his objection to the joinder with respect to the charge of threatening to burn or bomb.

"A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Ingram v. Commonwealth*, 62 Va. App. 14, 21 (2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). An appeal may have issues that are both moot and not moot. *See id.* at 23 n.2.

Rule 3A:10(c) provides that "[t]he court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Rule 3A:6(b) provides that

> [t]wo or more offenses, any of which may be a felony or
> misdemeanor, may be charged in separate counts of an indictment
> or information if the offenses are based on the same act or

- 7 -

transaction, or on two or more acts or transactions that are
connected or constitute parts of a common scheme or plan.

When a defendant does not consent to be tried jointly, "the Commonwealth [is] required to establish both of the two other conditions of Rule 3A:10(c), namely, that the offenses satisfied the requirements of Rule 3A:6(b), and that justice did not require separate trials." *Scott*, 274 Va. at 644.

There can be no joint trial of one offense. Just as it takes two to tango, it takes at least two offenses to challenge joinder. Definitionally, Rule 3A:6(b) permits a court to join *two or more* charges. Any joinder ruling rendered by the circuit court applies to both charges. When Howard pleaded no contest to the charge of assault and battery, he cured his own objection and gave himself the relief he sought from the circuit court—a separate trial on the charge of threatening to burn or bomb. As a result, Howard's assignment of error as to the charge of threatening to burn or bomb is moot.

Howard's first assignment of error is waived as to the charge of domestic assault and battery, and moot as to the charge of threatening to burn or bomb. As a result, we affirm the court on this assignment of error.

## II. Admissibility of Evidence

Howard next assigns error to the circuit court's decision to admit certain evidence occurring after the threat to burn or bomb. The Commonwealth argues that Howard has waived this objection by introducing similar evidence in rebuttal. While we find that Howard did not waive this objection, we hold that the circuit court did not err in admitting the evidence.

## Standard of Review

A circuit court's decisions regarding the admissibility of evidence are reviewed for abuse of discretion. *Jones v. Commonwealth*, 71 Va. App. 70, 85 (2019). A reviewing court can

conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015).

On appeal, Howard argues that six pieces of evidence and testimony should have been excluded because they (A) are temporally too far removed from the initial threat, (B) are evidence of other bad acts, and (C) are overly prejudicial. Howard objected to the admission of the following: evidence of A.H.'s 911 telephone call; Wendy's testimony about the evening argument with Howard; Wendy's testimony about her fear and reactions to Howard's behavior; Wendy's testimony about Howard's gun ownership; A.H.'s testimony about the evening argument between her parents; and A.H.'s testimony about her belief about and reactions to Howard's behavior. Because the entire day was part of a continuing domestic dispute and a reasonable jurist could find that the evidence was not substantially more prejudicial than probative, the circuit court did not abuse its discretion in admitting evidence about the events following the threat.

## A. Timeliness[2]

The four-hour separation in time does not render the evidence offered irrelevant. The evidence offered was part of a continuous, day-long domestic dispute. "Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." *Scott v. Commonwealth*, 228 Va. 519, 526

---

[2] The Commonwealth argues that Howard waived his second assignment of error by offering text messages further removed in time from the threatening phone call. While a defendant waives his objection to evidence he considers improper by introducing evidence of the same character in his case-in-chief, he does not waive it when it is "elicited in the cross-examination of a witness or in the introduction of rebuttal evidence." *Pettus v. Gottfried*, 269 Va. 69, 79 (2005); *Saunders v. Commonwealth*, 211 Va. 399, 401 (1970).

Howard's counsel showed the text messages to Wendy on cross-examination to rebut her testimony. Moreover, Howard did not offer the text messages into evidence and did not offer evidence in his case-in-chief. Therefore, the *Saunders* waiver rule does not apply in this case.

(1984). "The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses." *Id.* at 526-27.

In *Summerlin v. Commonwealth*, 37 Va. App. 288, 291-92, 294 (2002), this Court affirmed a circuit court's admission of evidence of a separate threatening phone call, from a completely different day, because it was relevant to the defendant's intent to make a different threat to burn or bomb. Here, the events occurred on the same day, much closer in time than the separate days in *Summerlin*. Howard cites *McGowan v. Commonwealth*, 247 Va. 689 (2007), for the proposition that the evidence offered by the Commonwealth after the initial threatening call was too far removed and therefore irrelevant. In *McGowan*, the Supreme Court of Virginia held that a defendant's later alleged possession of drugs was irrelevant to his knowledge in a case for a drug sale three months earlier. 274 Va. at 696. Here, the time gap is not three months, but four hours. Because the caselaw does not support the proposition that a four-hour time period renders evidence irrelevant, the circuit court did not abuse its discretion on this basis.

## B. Bad Acts Evidence

Howard asserts that the evidence offered by the Commonwealth from the evening argument was inadmissible evidence of other crimes or bad acts. Evidence of the accused's other crimes or bad acts are generally not admissible "to show the accused's commission of the particular crime charged." *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008). However, the other bad act at issue here is the domestic assault and battery, which the circuit court explicitly prohibited the parties from introducing in its ruling on Howard's motion *in limine*. The circuit court excluded the underlying act of spitting that formed the basis for that offense. Despite Howard's description, the evidence at issue is not a bad act or other crime, but evidence of the surrounding events, which likewise relate to the threatening to burn or bomb charge.

A.H. calling 911, Howard's gun ownership, and A.H. and Wendy testifying about the evening argument and about their reactions to Howard's behavior, excluding Howard's spitting, were not evidence of another bad act. Thus, Howard's only remaining objection to the evidence's admissibility is that the evidence was overly prejudicial.

## C. Prejudice

A reasonable jurist could find that the evidence Howard objected to was not substantially more prejudicial than probative. Relevant evidence is evidence that has a "logical tendency, however slight, to prove a fact at issue in the case." *Winston v. Commonwealth*, 268 Va. 564, 596 (2004). "Relevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice . . . ." Va. R. Evid. 2:403(a). The term "'unfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Lee v. Spoden*, 290 Va. 235, 251 (2015).

The elements of the offense on trial are set forth in Code § 18.2-83. That section provides that "[a]ny person . . . who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage . . . any means of transportation" is guilty of a felony. Code § 18.2-83(A). To establish a threat to bomb or burn, the Commonwealth is required to prove that the defendant made and communicated to the victim a threat to bomb, burn, destroy, or in any manner damage any means of transportation. *Summerlin*, 37 Va. App. at 297. "[M]alice is not an element of Code § 18.2-83," and "proof only of [the defendant's] *mens rea*, or unlawful intent," is required. *Id.* at 296. "Proof that [the defendant] intended to make and communicate the threat and that the threat was made and communicated satisfies the statutory requirement." *Id.* at 297. Moreover, a threat is "a communication avowing an intent to injure another's person or property" and "must reasonably cause the receiver to believe that the

- 11 -

speaker will act according to his expression of intent." *Perkins v. Commonwealth*, 12 Va. App. 7, 16 (1991).

All of the evidence Howard objects to is relevant, and the court did not abuse its discretion in finding that the prejudice did not substantially outweigh its probative value. The Commonwealth's evidence of the 911 telephone call, Howard's gun ownership, and testimony of Wendy and A.H. about the evening argument and their reactions to Howard's behavior all relate to the events following the threat, Howard's ability to carry out the threat, Wendy's belief in the threat, and the relationship between the Howards. Given that the circuit court excluded the evidence of the spitting, the only prejudice remaining was the potential risk of the jurors conflating Wendy's belief with A.H.'s belief or conflating the mere fact that Howard owned guns with the Howard's guilt of the instant crime. Because Howard is not entitled to present a sanitized version of the facts, and the day's events are interconnected, a reasonable jurist could find that the prejudice did not substantially outweigh the testimony's probative value.

The evidence at issue is not too far removed in time and is not evidence of other bad acts. Moreover, the evidence's probative value is not substantially outweighed by any prejudice. Therefore, the circuit court did not abuse its discretion in admitting evidence of the evening argument that followed the threat to burn or bomb.

### III. Sufficiency of the Evidence

Howard next assigns error to the sufficiency of the evidence for his conviction of threatening to burn or bomb. Howard limits his assignment of error to whether Wendy's fear of Howard's threatening statement was reasonable. Because there was sufficient evidence that Wendy reasonably feared that Howard would follow through on his threat, the circuit court did not err.

Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). "[T]he evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court . . . ." *Enriquez v. Commonwealth*, 283 Va. 511, 514 (2012).

As discussed above, the charge of threatening to burn or bomb requires showing that the defendant made and communicated to the victim a threat to bomb, burn, destroy, or in any manner damage any means of transportation and that he reasonably caused the receiver to believe that the speaker will act according to his threat. *See* Code § 18.2-83(A); *Summerlin*, 37 Va. App. at 297; *Perkins*, 12 Va. App. at 16.

Wendy testified that she believed Howard would follow through on his threat because of his military training and his history of following through on promises. She asserted that he used guns and explosives at work and was familiar with automobiles. Wendy testified that Howard made the threat when he was agitated. When Wendy returned home and Howard was not there, she barricaded the front door to prevent him from entering. Once Howard entered the house and they began arguing, Wendy locked herself in the room with his guns and ammunition. Wendy's testimony and reaction to Howard's threat demonstrated her belief that he would follow through on his threat. A.H.'s testimony corroborated the reasonableness of Wendy's belief. Moreover, the testimony about Howard's training, knowledge, and past behavior provided a basis to conclude that such belief was reasonable. Therefore, as there was sufficient evidence for the jury to convict Howard of threatening to burn or bomb, we affirm the circuit court on this assignment.

IV.  Code § 18.2-83

Finally, Howard argues that the circuit court misapplied Code § 18.2-83 to this case's facts, because he owned the vehicle he threatened to bomb.  Because the statute's plain language does not draw a distinction based on property ownership, we find that the circuit court did not err.

Standard of Review

"Statutory interpretation is a question of law which we review de novo, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result."  *Wright v. Commonwealth*, 278 Va. 754, 759 (2009).

Code § 18.2-83(A) provides that "[a]ny person . . . who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage . . . any means of transportation" is guilty of a felony.

This statute's plain language does not differentiate based on property ownership.  Instead, the statute prohibits threatening to bomb or burn "any means of transportation."  Code § 18.2-83.

The ownership distinction argued by Howard arises from this Court's opinion in *Perkins*, 12 Va. App. at 15.  There, this Court addressed a First Amendment challenge to Code § 18.2-83, where the appellant argued that the statute was facially invalid because it was unconstitutionally overbroad.  *Id.* at 11-12.  Perkins' challenge raised the statute's overbreadth generally, and not its application solely to his case.  *Id.*  Perkins claimed that because the statute did not draw a distinction based upon the property's ownership, the statute unconstitutionally criminalized threats to destroy one's own property.  *Id.* at 15.  In addressing the overbreadth argument, this Court reasoned that

> [a]s for threats to destroy one's own property, "[t]he mere fact that one can conceive of some impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge; there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not

> before the court for the statute to be facially challenged on overbreadth grounds."

*Id.* at 15-16 (quoting *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984)). The Court further noted that "[s]uch a realistic threat does not exist in this instance." *Id.* at 16.

Thus, Howard attempts to use the phrase "some impermissible application of a statute" to write a distinction into Code § 18.2-83(A) that does not exist. The Court's holding in *Perkins* was constrained to its conclusion that there was no "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." *Id.* at 15-16. At most, the Court's opinion stated that Code § 18.2-83(A) did not pose a realistic danger to the First Amendment protections of non-parties. *Id.* It did not limit the application of Code § 18.2-83(A).

The case before us is not a First Amendment challenge to Code § 18.2-83. Rather, Howard's fourth assignment of error is based upon a misunderstanding of the elements of the offense at issue. Nothing in the statute's plain language carves out threats to burn or bomb one's own property from the scope of the offense. *Perkins* did not change the statute, and Howard does not argue that his First Amendment rights are violated by his conviction. Therefore, because the statute's plain language prohibits threatening to burn or bomb "any means of transportation" regardless of ownership, we affirm the circuit court.

CONCLUSION

Howard waived his objection to the joinder of his charges by pleading no contest to the assault and battery charge. The circuit court did not abuse its discretion in the admission of evidence at trial and did not misapply Code § 18.2-83. Finally, there was sufficient evidence to convict Howard of threatening to burn or bomb. Therefore, we affirm the circuit court's decision.

*Affirmed*.